### BRADLEY V. THE PEOPLE.

1. Independent of statute, in some cases, negligence may be so gross as to justify the inference of criminal intent, and may be regarded, within limits, as supplying its place. But this is upon the proposition that criminal intent is a requisite, and that gross negligence is substantially the same thing.

2. In arriving at the intention of the legislature where the language is doubtful, words and context are not the only guides. The subject-matter, effects and consequences, the spirit and reason of the law, are equally to be considered.

3. Unless the intention is too palpable to admit of doubt, the judiciary should not adjudge an unnatural or unjust consequence as within the contemplation of the law.

4. The common law is as much to be taken into account in construing a statute as a previous statutory enactment. A statute, general in its terms, is always to be taken as subject to any exceptions which the common law requires.

5. A statute will not generally make an act criminal, however broad may be its language, unless the offender's intent concurred with his act, because the common law requires such a concurrence to constitute a crime.

6. Under section 6, General Statutes, page 927, *held* that the criminal intent will be presumed upon proof of the act, and the defendant may show that he acted in good faith and with innocent motives.

*Error to District Court of Park County.*

THE plaintiff in error was tried and convicted in the district court of Park county, and sentenced to imprisonment in the penitentiary for the term of one year, on a

charge preferred under section 6 of an act entitled "An act to provide for the branding, herding and care of stock, and to repeal certain acts in relation thereto." The section reads as follows: "If any person shall brand or mark, or cause to be branded or marked, with his, her, or their brand, or any other not the recorded brand of the owner, any animal being the property of another, or shall efface, deface or obliterate any brand or mark upon any animal, any such person so offending shall be deemed guilty of larceny, and on conviction thereof shall be confined in the penitentiary not less than one year nor more than five, as the court may direct, and shall also be liable to the owner thereof for three times the value of the animal so branded or marked, or upon which the brand or mark shall have been so effaced, defaced or obliterated, and in no case shall the payment of the forfeiture herein mentioned entitle the person so branding, effacing, defacing or obliterating a brand, to the property in the animal so branded, or upon which the brand was effaced, defaced or obliterated, but such animal shall be surrendered to the proper owner." Gen. Stats. 927.

The repealed section reads as follows: "If any person shall wilfully brand, or mark with his own brand, any animal such as mentioned in the first section, being the property of another, or shall wilfully efface, deface or obliterate any mark or brand upon any *such* animal with intent to convert such animal to his own use, or to prevent the owner thereof from recovering the same, every such person so offending shall be deemed guilty of larceny." R. S. 1868, sec. 8, c. 58, p. 451.

Upon the trial of the cause, the judge gave, among others, the following instruction: "Under the statute upon which this indictment is founded, the presence of a criminal intent is immaterial; the law presumes criminal negligence from the act; if you find from the evidence, beyond a reasonable doubt, the facts of branding

or marking by defendant, or the effacing, defacing or obliterating of the brand ' I. C.' by him, and the venue and ownership in accordance with the foregoing instruction, he is guilty, under the statute, of the offense charged in the indictment, although it may appear possible that he so branded or marked, or caused to be branded or marked, the animal or animals described, or effaced, defaced or obliterated the brand ' I. C.' on the same through inadvertence or mistake."

This instruction is assigned for error.

Messrs. WILKIN and BAILEY and R. D. THOMPSON, for plaintiff in error.

Attorney-General D. H. URMY, for defendant in error.

ELBERT, J.   There is nothing in the language of the statute to warrant the charge that "the law presumes criminal negligence from the act."   A reference to the statute will verify this.   Independent of statute, in some cases, negligence may be so gross as to justify the inference of criminal intent, and may be regarded, within limits, as supplying its place.   But this is upon the proposition that criminal intent is a requisite and that gross negligence is substantially the same thing.   Eliminating this part of the charge from the instruction, two associated but distinct propositions remain to be considered.

At the date of the passage of the statute under consideration, as now, the Criminal Code defined larceny as " being the felonious stealing, taking, carrying, leading, riding or driving away the personal goods of another." This is a modification of the common law definition, which, in addition, gives "conversion to the taker's own use," and "without the consent of the owner," as requisites.

If the construction placed upon section 6 of this statute by the court below is to be regarded as correct, then the legislature have declared that to be larceny which

wants all the constituent elements of larceny as defined by either our Criminal Code or the common law.

This is drifting widely from first principles. "Crime proceeds only from a criminal mind. The doctrine which requires an evil intent lies at the foundation of public justice." Not only this, the chief ideas upon which the state is founded are the safety and liberty of its citizens. The safety of property is important, it is true, but secondary.

A statute enacted in the interest of personal property by the law-making power, denouncing certain acts as larceny, under heavy penalties of fine and imprisonment, and declaring "criminal intent immaterial," and "mistake no defense," would justly excite surprise, if nothing more.

A rule of interpretation respecting words in the repealed law, omitted in the new law, and a line of authorities under statutes making an act indictable irrespective of intent, in which mistake is held as "no defense," it is claimed justify the conclusion of the court below.

From the fact that the word "wilfully," which occurred in the repealed section, is omitted from the new section, and no equivalent word supplied, it is concluded that under the new law "criminal intent is immaterial," and that such was the legislative intention.

It is to be observed in this connection, by the application of the same rule, it would be necessary to hold that "to efface, deface or obliterate any brand" from one's own cattle would be larceny under the section, and punishable accordingly. The language of the statute is, "to efface, deface or obliterate any brand or mark from any animal, any such person so offending shall be deemed guilty of larceny." The word "such" between the words "any" and "animal" in the repealed section is omitted from the new law. Ownership as well as intent would therefore be immaterial, and, equally with mistake, no de-

fense.  A reference, however, to the context shows clearly
that such could not have been the intention.   It is also
to be observed that section 4 of the act makes branding,
under certain circumstances, compulsory under penalty
of heavy fine, so that under it the cattle-owner is fined
if he does not brand, and if he does, under section 6, as
interpreted, he is sent to the penitentiary should he make
a mistake.

The application of rules of interpretation and construc-
tion leading to such results is rather to be distrusted than
that such an intention should be believed.

We must look to other rules as safer guides and as con-
trolling in this case.   In arriving at the intention of the
legislature where the language is doubtful, words and con-
text are not the only guides.   The subject-matter, effects
and consequences, the spirit and reason of the law, are
equally to be considered.   Again, unless the intention is
too palpable to admit of doubt, duty and respect to the
legislative body require that the judiciary should not ad-
judge an unnatural or unjust consequence as within the
contemplation of the law.

In support of the instruction of the court below, we
are cited by the attorney-general to an extended list of
cases under statutes making an act indictable, irrespect-
ive of intent, in which it is held that mistake is no de-
fense, and on the authority of which it is claimed that
it is no defense under this section.

In so far as the section to be construed is *general* in its
terms, it belongs to the class of statutes mentioned, con-
cerning which there is much conflict of authority.   As a
rule, the statutes referred to deal with acts which in their
essential nature menace public safety or morals, and
which it may be sound policy to arbitrarily prohibit.

The object of the statute we are considering is not to pro-
hibit branding as something essentially immoral and dan-
gerous, but to protect it as a lawful and necessary thing.
Bearing this in view in seeking for the intention of the

legislature, it is not difficult to see that the section to be construed is to be distinguished from the class of statutes mentioned as springing from and influenced by entirely different considerations.   A legislative intention justly imputable in the class of statutes mentioned, might be utterly indefensible in the case in hand.   Kinship in character being so distant, likeness in intention is not to be supposed.   For this reason most of the cases cited by the attorney-general in support of the instruction, arising under statutes referred to, are to be regarded as misleading, and many of them are pronounced by Mr. Bishop in his work on statutory crimes as unsound.   Secs. 356 *et seq.*, 1022 *et seq.*

The common law is as much to be taken into account in construing a statute as a previous statutory enactment (Bishop on Statutory Crimes, sec. 88); and in this case it gives us a rule which, in connection with the other rules laid down, must control.

"A statute general in its terms is always to be taken as subject to any exceptions which the common law requires.   Thus, if it creates an offense, it includes neither infants under the age of legal capacity, nor insane persons, nor, ordinarily, married women acting in the presence and by the command of their husbands."   Bishop on Statutory Crimes, sec. 131.

"Again, a statute will not generally make an act criminal, however broad may be its language, unless the offender's intent concurred with his act, because the common law requires such a concurrence to constitute a crime.   A case of overwhelming necessity, or of honest mistake of facts, will thus be excepted out of a general statutory prohibition."   Bishop on Statutory Crimes, secs. 132, 351 *et seq.*, and cases there cited.

Whatever may be the just limits of this rule, we are satisfied it should control in this case.   Accepting it, we harmonize this section with the general principles of jurisprudence.   We do no violence to the language of the

act, we only limit the force of a rule of construction respecting omitted words, by the application of another rule as (in a legal sense) the higher law of the case. We do not leave the legislature without a purpose in omitting the word "wilfully" from the new act. Under the repealed section it was necessary, in order to conviction, to prove a "felonious intent." As the law now stands, the criminal intent will be presumed upon proof of the act. This leaves the defendant to show that he acted in good faith and with innocent motives. Bishop on Statutory Crimes, secs. 358, 675; *People v. Harris*, 29 Cal. 682. To shift this burden of proof, we think it is fair to say, is what the legislature had in view. We do not believe that it was intended the cattle-owner should brand his cattle at his peril.

The instruction given by the court below was erroneous, the judgment is reversed, and the cause remanded for further proceedings under the law.

*Reversed.*