## UNITED STATES v. STANDARD OIL CO.

(First Division.   Juneau.   May 9, 1921.)

No. 1404–B.

**1. Licenses** ⬤➡16(9), 40—Definitions—Criminal Law—Intent.

The Standard Oil Company engaged in business in Alaska in selling oil and oil products, and maintained separate stations for that use at each of six places in the First division, to wit, at Juneau, Ketchikan, Petersburg, Wrangell, Waterfall and Sitka. The company applied for and obtained a single license at "all Alaska," and paid therefor the maximum sums for one license. An indictment was found by the grand jury against the company for doing business at the six "mercantile establishments" without license for each place. On plea of not guilty a trial by jury was waived and the cause submitted to the court for determination on the facts and law. *Held,* the transaction of business at each of such places mentioned in the indictment constituted each a "mercantile establishment," and the law required each such establishment to take out license and pay therefor according to law; that a payment for one maximum license in all Alaska was in violation of the statute; but also *held,* there was no evidence in the case of intent to violate the law, and the court found the defendant not guilty and dismissed the case.

**2. Licenses** ⬤➡42(3)—Indictment and Information.

Defendant was indicted for prosecuting business as a mercantile establishment at Juneau, Ketchikan, Petersburg, Wrangell, Waterfall and Sitka without license. The indictment disclosed that the defendant had applied to the clerk of the court for and had received a license to carry on its business "in all Alaska," but had paid therefor only a single maximum amount for one license, and under that one license for "in all Alaska" was conducting six "mercantile establishments" for the sale of its commodities at the places mentioned. A jury was waived, and the case submitted to the court on agreed facts and the law. *Held,* the defendant could not be convicted under the indictment because there could be no application of the sum paid by it to the clerk of the court to either one of the six places mentioned in the indictment, for the court could not arbitrarily say that the sum was for Juneau, and not for Ketchikan. Not guilty, and prosecution dismissed.

The Standard Oil Company, defendant, stands indicted for doing business without a license on six counts, charging the doing of business at Juneau, Ketchikan, Petersburg, Wrangell,

Waterfall, and Sitka.   It is alleged in the indictment that the license properly required for doing business at Juneau was $500; for doing business at Ketchikan was $500; for doing business at Petersburg was $250; for doing business at Waterfall,was $50; and for doing business at Sitka was $50. The company pleaded not guilty of the offense charged in any of the said counts.   A trial by jury was waived, and the cause submitted to the court upon an agreed statement of facts, the substance of which is as follows:   That for doing business during the time covered by the indictment the defendant had applied for and received from the clerk of this court a license to carry on its business "at all Alaska, district of Alaska, division No. 1," from the 1st day of November, 1914, to the 31st day of October, 1915; that under such license it did transact a large amount of business at the places mentioned in the various counts of the indictment.

It is the contention of the government that the defendant should have applied for and obtained a license at each of the different places mentioned in the various counts; while it is the contention of the defendant that one license is sufficient to cover the doing of business in all Alaska, and especially in all of the First division of Alaska.

James A. Smiser, U. S. Atty.

Hellenthal & Hellenthal, of Juneau, for defendant.


JENNINGS, District Judge.   Our statute prescribes that mercantile establishments doing a business of $100,000 per annum shall, before "prosecuting or attempting to prosecute * * * business within the district of Alaska, * * * first apply for and obtain license so to do from the district court, or a subdivision thereof in said district, and pay for said license" the sum of $500.   Comp. Laws Alaska 1913, § 2569.

The statute further provides that said license shall be issued by the clerk of the district court, or any subdivision thereof, in compliance with the order of the judge thereof duly made and entered.   Notwithstanding the provision requiring the making and entry of an order by the judge, the uniform practice in force at all times since the adoption in 1900 of the licensing form of taxation has been for the clerk to issue all

licenses, except liquor licenses, without any formal order from the court unless some remonstrance has been filed and heard, for it was manifest that, if the judge of the court were compelled to investigate and pass upon the merits of each particular application for a mercantile or other license, there would be little time left for the performance of the ordinary judicial functions. Liquor licenses have always been an exception, the court, of course, using its discretion as to the issuance of such licenses. During the period aforesaid there have been three judges of the court besides the present incumbent. The clerk of the court had verbal directions from the judge to issue mercantile licenses as a matter of course; in other words, there was a blanket order, but it was never made or entered.

As before stated, the Standard Oil Company obtained a license to do business "in all Alaska," and paid therefor the maximum amount mentioned in the statute. There is no evidence of any intent to violate the statute, if indeed the statute has been violated. Counsel for the government contends, however, that intent is not a material element of the offenses charged, because, as said counsel contends, the offense is a statutory one, and intent is not mentioned in the statute.

While the requirement to pay a license before doing busi- is a purely statutory one, and it has been held in many cases that the element of intent is not involved in a violation of such a statute, unless the statute expressly makes intent a material element, nevertheless there are many cases holding to the contrary. In the first volume of McClain's Criminal Law, p. 100, the author says:

"Indeed, on the whole question as to whether absence of intent may be shown as a defense in a prosecution for violating statutory regulations, the authorities are irreconcilably in conflict. * * * The apparent conflict in the cases on this subject is to be explained upon the principle that the question whether or not intent is material must be determined by the construction of the particular statute in question, and if the construction excluding the element of intent would lead to an absurdity, the defense of want of intent must be admitted."

It is the intention of the Legislature that must be sought. The following language from the case of Bradley v. People, 8 Colo. 603, 9 Pac. 785, seems to express what ought to be, and I have no doubt is, the consensus of opinion:

"In arriving at the intention of the Legislature where the language is doubtful, words and context are not the only guides. The subject-matter, effects and consequences, the spirit and reason of the law, are equally to be considered. Again, unless the intention is too palpable to admit of doubt, duty and respect to the legislative body require that the judiciary should not adjudge an unnatural or unjust consequence as within the contemplation of the law.

"In support of the instruction of the court below, we are cited by the Attorney General to an extended list of cases under statutes making an act indictable, irrespective of intent, in which it is held that mistake is no defense, and on the authority of which it is claimed that it is no defense under this section.

"In so far as the section to be construed is general in its terms, it belongs to the class of statutes mentioned, concerning which there is much conflict of authority. As a rule, the statutes referred to deal with acts which in their essential nature menace public, safety or morals, and which it may be sound policy to arbitrarily prohibit.

"The object of the statute we are considering is not to prohibit branding as something essentially immoral and dangerous, but to protect it as a lawful and necessary thing. Bearing this in view in seeking for the intention of the Legislature, it is not difficult to see that the section to be construed is to be distinguished from the class of statutes mentioned as springing from and influenced by entirely different considerations. A legislative intention justly imputable in the class of statutes mentioned might be utterly indefensible in the case in hand. Kinship in character being so distant, likeness in intention is not to be supposed."

In section 131, Bishop on Statutory Crimes, the following language is used:

"Again, a statute will not generally make an act criminal, however broad may be its language, unless the offender's intent concurred with his act, because the common law requires such a concurrence to constitute a crime. A case of overwhelming necessity, or of honest mistake of facts, will thus be excepted out of a general statutory prohibition."

An exemplification of this is found in the recent decision of the United States Supreme Court in which it was declared that the word "possession," in defining the crime of being in possession of dies for counterfeiting, was to be construed as requiring a willful and conscious possession, the court saying that, while the words of the statute—

"are general, they are to be taken in a reasonable sense and not in one which works manifest injustice or infringes constitutional safeguards. * * * All laws should receive a sensible construction. general terms should be so limited in their application as not to lead to injustice, oppression, or an absurd consequence. It will always.

therefore, be presumed that the Legislature intended exceptions to its language, which would avoid results of this character. The reason of the law in such cases should prevail over its letter." Baender v. Barnett, Sheriff (Feb. 28, 1921), 255 U. S. 224, 41 Sup. Ct. 271, 65 L. Ed. 597.

On account of the fact that not only is there a total absence of criminal intent, but also that there is positive evidence of a desire to comply with the law, the court must find the defendant not guilty, and order the prosecution dismissed.

Another consideration that leads me to believe that the defendant must be found not guilty is this fact, to wit: There are six counts in the indictment, charging, respectively, the doing of business at Juneau, Ketchikan, Petersburg, Wrangell, Waterfall, and Sitka. The required license for counts 1 and 2 would be $500 each; for count 3, $250; for count 4, $125; for count 5, $50; for count 6, $50. The defendant paid $500 and obtained a license to do business in all Alaska. This being the case, under which count would the court sentence the defendant? If it sentences it for doing business in Ketchikan without having paid the required sum, defendant shows that it paid $500, and the clerk accepted the same generally. The court, therefore, would have to arbitrarily say that $500 was for Juneau, and not for Ketchikan, but the court might just as well say it was for the license required at Sitka, Waterfall, Wrangell, and Petersburg.

⬸See same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes