James P. VIGIL, as Conservator for
James R. Vigil, Petitioner,

v.

William FRANKLIN, Gladys Franklin,
and Will Franklin, Respondents.

No. 03SC479.

Supreme Court of Colorado,
En Banc.

Nov. 30, 2004.

Buchanan, Jurdem & Cederberg, P.C., Ross B.H. Buchanan, Denver, for Petitioner.

Levy, Morse & Wheeler, P.C., Karen H. Wheeler, Brian J. Waters, Englewood, for Respondents.

Holland & Hart, Susannah Pollvogt, Patricia Dean, Denver, Amicus Curiae for Colorado Trial Lawyers Association.

Campbell, Latiolais & Ruebel, P.C., Jeffrey Clay Ruebel, Denver, Amicus Curiae for Colorado Defense Lawyer's Association.

Snell & Wilmer, LLP, Lee Mickus, Denver, Amicus Curiae for Colorado Civil Justice League.

RICE, Justice.

Petitioner James Vigil seeks review of the court of appeals' decision that the trial court's grant of summary judgment was proper because the common law open and obvious danger doctrine survived enactment of Colorado's premises liability statute.[1] We reverse.

Upon review, we find that the express, unambiguous language of the statute evidences the General Assembly's intent to establish a comprehensive and exclusive specification of the duties landowners owe to those injured on their property. Accordingly, common law landowner duties do not survive its enactment. In addition, nothing in the plain language of the statute, either expressly or by clear implication, incorporates the common law defense of open and obvious dangers. Therefore, we hold that the common law open and obvious danger doctrine does not survive the enactment of Colorado's premises liability statute.

## I. Facts and Proceedings Below

Vigil, 36–years–old and mildly retarded, filed a tort cause of action seeking damages

---

1. § 13–21–115, C.R.S. (2004)

for injuries he received in a tragic diving accident. Since the trial court granted summary judgment on the pleadings, no trial was held and much of the circumstances concerning the accident are disputed. Vigil alleges that on June 25, 1997, he dove into a four-feet-deep, above-ground pool on Respondents William, Gladys, and Will Franklins' ("the Franklins") property and sustained severe spinal injuries, rendering him a permanent quadriplegic. Vigil was on the Franklins' property as a laborer for the Arkansas Valley Community Center for Handicapped and for Retarded Persons, Inc. (the "Girch Center"), from which he received job training skills and work experience. The Franklins had contracted with the Girch Center for weed removal and other manual labor. On the morning of the accident, Vigil worked at another Girch Center jobsite repairing wood pallets. After a lunchtime altercation with another laborer, the Girch Center transferred Vigil to the Franklins' property for the afternoon.

Vigil worked until about 2:30 p.m., when he and other Girch Center laborers began joking about whether anyone wanted to get thrown into the swimming pool. Then, as Vigil stated in his deposition: "[w]e were getting ready to clean up. And I had mentioned to the guys that, [w]ell, is anyone going to jump in the pool. And when I didn't hear nothing or no response, I said, [y]ou bunch of chickens. And since nobody was going to go, I was going." Vigil took off his shirt, shoes, and socks, removed his wallet, and ran towards the pool. He climbed up onto the narrow white metal rim of the pool, and crouched with his head lowered. According to Vigil, he "was attempting to dive in and come up on the other side right away"—to execute a racing-style dive. Instead, the top front of Vigil's head struck the bottom of the pool, fracturing his sixth and seventh cervical vertebra. Fellow Girch Center laborers pulled Vigil out of the pool and emergency medical assistance was requested.

The Franklins moved for summary judgment, arguing, *inter alia,* that they owed no duty of care to Vigil because diving into an above-ground pool was an open and obvious danger. With no analysis and without stating any specific grounds, the trial court granted their motion, finding, among other things, the following undisputed facts:

[1.] The existence of the swimming pool and the nature of its structure were obvious, that is, it was beyond doubt that the structure was a swimming pool, that some of the pool extended above ground level, and that ... [Vigil] was taller than that portion of the pool which was above ground.

[2.] Vigil did not know the depth of the swimming pool when he dived in.

Vigil appealed and the court of appeals affirmed. In a published opinion, *Vigil v. Franklin,* 81 P.3d 1084 (Colo.App.2003), the court of appeals held that the Franklins had no duty to warn Vigil of the open and obvious danger of diving into an above-ground swimming pool. Consequently, the court affirmed the grant of summary judgment.

Vigil sought review, and because of the importance of the issue raised, we exercised our discretion to hear his case.[2]

## II. Legal Background

The issue in this case is whether common law defenses to landowner duties, such as the open and obvious danger doctrine, still exist, even after the passage of Colorado's comprehensive premises liability statute. In order to answer this question, a brief synopsis of the common law principles at issue as well as the premises liability statute is necessary. We turn first to common law principles of tort liability, including the concepts of landowner duties and defenses to duty.

### A. Creation of Common Law Duties and Defenses

A tort may be defined as legally improper conduct that causes harm and im-

---

**2.** We granted certiorari to consider first, whether the common law open and obvious danger doctrine survived enactment of Colorado's premises liability statute, and second, whether the open and obvious danger of diving into the Franklins' above-ground swimming pool supported the grant of summary judgment.

poses civil liability. *E.g.,* Dan B. Dobbs, *The Law of Torts* § 1, at 1 (2000). Tort law largely finds its origin in the common law, though legislatures increasingly participate in determining what conduct constitutes a tort. *Id.* In cases involving negligent torts, a common law prima facie cause of action requires the proof of four elements: a plaintiff must show that first, the defendant owed a legal duty of care; second, the defendant breached that duty; third, the plaintiff was injured; and fourth, the defendant's breach caused that injury. *E.g., Ryder v. Mitchell,* 54 P.3d 885, 889 (Colo.2002). Of these, duty is the threshold element. Only if there is a legal duty to avoid unreasonably risky conduct does the issue of breach and then the other negligence elements arise.

At common law, whether a defendant owes a duty to a plaintiff is a question of law to be determined by the court. *E.g., Cary v. United of Omaha Life Ins. Co.,* 68 P.3d 462, 465 (Colo.2003). " '[T]he existence and scope of the duty' " essentially addresses " 'whether the plaintiff's interest that has been infringed by the conduct of the defendant is entitled to legal protection.' " *Taco Bell, Inc. v. Lannon,* 744 P.2d 43, 46 (Colo. 1987) (quoting *Metro. Gas Repair Serv., Inc. v. Kulik,* 621 P.2d 313, 317 (Colo.1980)).

A defendant always has the option at common law of arguing that he did not owe a duty to an injured plaintiff. Structurally, this argument is independent of and arises before other recognized negligent tort defenses such as contributory negligence and comparative fault. Where a defendant successfully argues no duty, there is no subsequent inquiry into negligence; considering additional defenses under the breach, causation, and damages elements is entirely unnecessary.

Here, the Franklins exercised their common law option to argue that they owed no

duty of care to Vigil because the danger of diving into the above-ground swimming pool was so open and obvious as to discharge any legal duty. In so arguing, they relied primarily upon our decision in *Smith v. City and County of Denver,* 726 P.2d 1125 (Colo. 1986). In *Smith,* we held that the Denver Board of Water Commissioners was under no duty to warn an injured plaintiff of the "inherent dangers" of diving from boulders into a naturally-flowing river "because the potential for danger was readily apparent." *Id.* at 1127–28 (referring to *Burchinal v. Gregory,* 41 Colo.App. 490, 492, 586 P.2d 1012, 1013–14 (1978)).[3] To reach this conclusion, we borrowed principles from both strict liability and proximate cause. *See Bookout v. Victor Comptometer Corp.,* 40 Colo.App. 417, 419, 576 P.2d 197, 198 (1978) ("[T]he potential for danger inherent in a BB gun is readily apparent and a warning for the obvious is not a requirement of the doctrine of products liability.") (cited in *Burchinal,* 41 Colo.App. at 492, 586 P.2d at 1013–14); *Smith,* 726 P.2d at 1127 ("Owners and occupiers of land ... are not insurers against every foreseeable accident which might occur.") (citing *Webb v. Thomas,* 133 Colo. 458, 463–64, 296 P.2d 1036, 1038–39 (1956); *Burchinal,* 41 Colo. App. at 491–92, 586 P.2d at 1013).[4]

### B. Premises Liability

Since the alleged tort occurred on the Franklins' property, this is a tort "action against a landowner." *See* § 13–21–115(2).[5] As such, we must consider Colorado's premises liability statute in determining whether the Franklins owed Vigil a legal duty.

Colorado premises liability law has changed dramatically over the last 35 years. Prior to 1971, a landowner's duty of care was determined by the status of the injured party—specifically, whether the plaintiff was a trespasser, licensee, or invitee. *See Mile*

---

**3.** The accident in *Smith* occurred prior to the enactment of Colorado's premises liability statute and was decided entirely on common law tort principles. *See Smith,* 726 P.2d at 1126.

**4.** The parties and the court of appeals refer to these cases—irrespective of their jurisprudential underpinnings—as establishing the "open and obvious danger doctrine." Accordingly, we

make use of this language as well, but make no judgment as to the vitality of such a doctrine in the common law. For a brief survey of key "open and obvious" cases, see *infra* n. 14.

**5.** We note that tort claims against state public entities are governed by the Colorado Governmental Immunity Act, §§ 24–10–101–119, C.R.S. (2004).

*High Fence Co. v. Radovich,* 175 Colo. 537, 541 n. 2, 489 P.2d 308, 311 (1971) (citing extensive case law); *see generally* 7 John W. Grund & J. Kent Miller, *Colorado Personal Injury Practice—Torts and Insurance* §§ 19.2–19.7 (2d ed.2000). Then, in *Mile High Fence,* we abandoned the common law classification scheme in favor of the traditional negligence concept, requiring landowners to meet a standard of reasonable care "in view of the ... foreseeability of injury to others." 175 Colo. at 548, 489 P.2d at 314. The General Assembly then sought to reinstate the status classifications in 1986 by enacting the premises liability statute, Ch. 109, sec. 1, § 13–21–115, 6A C.R.S. (1987), 1986 Colo. Sess. Laws 683, but that statute was held unconstitutional in *Gallegos v. Phipps,* 779 P.2d 856, 862–63 (Colo.1989), thereby reinstating the *Mile High Fence* common law duty analysis. Thereafter, the General Assembly amended the statute in 1990 to address our equal protection concerns, but retained the status classifications. *See* Ch. 107, sec. 1, § 13–21–115, 6A C.R.S. (1990 Supp.), 1990 Colo. Sess. Laws 867; *see generally* Terrance A. Noyes, *The Colorado Premises Liability Statute,* 25 Colo. Law. 71, 72 (1996).[6]

The premises liability statute classifies those injured on the property of another as trespassers, invitees, or licensees.[7] § 13–21–115(3). Trespassers "may recover only for damages willfully or deliberately caused by the landowner." § 13–21–115(3)(a). Licensees are afforded greater protection and may recover only for damages caused:

(I) By the landowner's unreasonable failure to exercise reasonable care with re-

spect to dangers created by the landowner of which the landowner actually knew; or

(II) By the landowner's unreasonable failure to warn of dangers not created by the landowner which are not ordinarily present on property of the type involved and of which the landowner actually knew.

§ 13–21–115(3)(b). Finally, invitees "may recover for damages caused by the landowner's unreasonable failure to exercise reasonable care to protect against dangers of which he actually knew or should have known." § 13–21–115(3)(c)(I).[8] Whether an injured plaintiff is a trespasser, licensee, or invitee must be decided by the court, but the ultimate issues of liability and damages are questions of fact for a jury, or if none, for the trial judge. § 13–21–115(4).

Perhaps most important, subsection (2) establishes the broad scope of the statute, proceeding as follows:

(2) In *any* civil action brought against a landowner by a person who alleges injury occurring while on the real property of another and by reason of the condition of such property, or activities conducted or circumstances existing on such property, the landowner shall be liable *only* as provided in subsection (3) of this section.

§ 13–21–115(2) (emphasis added). Relying on this subsection, several panels of the court of appeals have held the statute to be the "exclusive remedy" available for parties injured on the property of another. *See, e.g., Henderson v. Master Klean Janitorial, Inc.,* 70 P.3d 612, 613 (Colo.App.2003) (citing *Thornbury v. Allen,* 991 P.2d 335, 340 (Colo. App.1999)).

**6.** We have not had occasion to determine the constitutionality of the statute as amended, and the issue is not properly before us now.

**7.** The statute defines each status classification as follows:

(a) "Invitee" means a person who enters or remains on the land of another to transact business in which the parties are mutually interested or who enters or remains on such land in response to the landowner's express or implied representation that the public is requested, expected, or intended to enter or remain.

(b) "Licensee" means a person who enters or remains on the land of another for the licensee's own convenience or to advance his own interests, pursuant to the landowner's permission or consent. "Licensee" includes a social guest.

(c) "Trespasser" means a person who enters or remains on the land of another without the landowner's consent.

§ 13–21–115(5).

**8.** The landowner's actual knowledge of a danger is required when the property involved is classified for tax purposes as either agricultural or vacant land. § 13–21–115(3)(c)(II).

### III. Analysis

The court of appeals held, as a matter of law, that the Franklins had no duty to warn Vigil of the swimming pool on their land because the pool presented a danger which was both open and obvious. In so holding, the court of appeals concluded that the premises liability statute did not preempt the common law open and obvious danger doctrine. It did so because it found, relying on one of the statute's statements of purpose, that it was "highly unlikely that the General Assembly intended to remove the protection of the open and obvious danger doctrine that landowners enjoyed under the generic negligence scheme." *Vigil,* 81 P.3d at 1088 (referring to § 13–21–115(1.5)(d)).[9]

 Grants of summary judgment are subject to de novo review. *E.g., Morrison v. Goff,* 91 P.3d 1050, 1052 (Colo.2004). As such, we are presented with a matter of first impression, namely whether, despite the language of the premises liability statute, common law defenses to landowner duties still exist. We hold that they do not. In so holding, we turn first, as we must, to the language of the statute.

### A. Principles of Statutory Construction

 Our primary duty in construing statutes is to give effect to the intent of the General Assembly, looking first to the statute's plain language. *E.g., In re 2000–2001 Dist. Grand Jury in and for First Judicial Dist.,* 97 P.3d 921, 924 (Colo.2004). If a statute is clear and unambiguous on its face, then we need not look beyond the plain language, *e.g., Garhart ex rel. Tinsman v. Columbia/HealthONE, L.L.C.,* 95 P.3d 571, 591 (Colo.2004), and "we must apply the statute as written," *In re 2000–2001 Dist. Grand Jury,* 97 P.3d at 924 (citing *Univex Int'l, Inc. v. Orix Credit Alliance, Inc.,* 914 P.2d 1355, 1358 (Colo.1996)); *see also* § 2–4–203(1)(c), (d), (g), C.R.S. (2004) ("If a statute is ambiguous, the court, in determining the intention of the general assembly, may consider among

other matters: ... [t]he legislative history, if any; [t]he common law ...; [and t]he legislative declaration or purpose."). In addition, " 'we afford the language of ... statutes their ordinary and common meaning [and] construe statutory ... provisions as a whole, giving effect to every word and term contained therein, whenever possible.' " *Cacioppo v. Eagle County School Dist. Re–50J,* 92 P.3d 453, 463 (Colo.2004) (quoting *Bd. of County Comm'rs. v. Vail Assocs., Inc.,* 19 P.3d 1263, 1273 (Colo.2001)) (alteration in original); *see also* § 2–4–201, C.R.S. (2004) ("In enacting a statute, it is presumed that: ... [t]he entire statute is intended to be effective ....").

 Moreover, as here, where the interaction of common law and statutory law is at issue, we acknowledge and respect the General Assembly's authority to modify or abrogate common law, but can only recognize such changes when they are clearly expressed. *E.g., Beach v. Beach,* 74 P.3d 1, 4 (Colo.2003); *see also* § 2–4–211, C.R.S. (2004) (where the General Assembly expressly retained authority to repeal common law rules). We have said that "[a] statute, general in its terms, is always to be taken as subject to ... the common law." *Bradley v. People,* 8 Colo. 599, 604, 9 P. 783, 786 (1886). Thus, " '[s]tatutes in derogation of the common law must be strictly construed, so that if the legislature wishes to abrogate rights that would otherwise be available under the common law, it must manifest its intent either expressly or by clear implication.' " *Vaughan v. McMinn,* 945 P.2d 404, 408 (Colo.1997) (quoting *Van Waters & Rogers, Inc. v. Keelan,* 840 P.2d 1070, 1076 (Colo. 1992)). And, "when the legislature speaks with exactitude, we must construe the statute to mean that the inclusion or specification of a particular set of conditions necessarily excludes others." *Lunsford v. W. States Life Ins.,* 908 P.2d 79, 84 (Colo.1995). Finally, we note that when it chooses to legislate in a particular area, the General Assembly is presumed to be aware of existing case law prec-

---

9. The subsection relied upon states "[t]hat the purpose of this section is *also* to create a legal climate which will promote private property rights and commercial enterprise and will foster the availability and affordability of insurance."

(emphasis added). The General Assembly also stated that another purpose of the statute is "to promote a state policy of responsibility by both landowners and those upon the land." § 13–21–115(1.5)(a).

edent. *E.g., Pierson v. Black Canyon Aggregates, Inc.,* 48 P.3d 1215, 1219 (Colo.2002).

## B. The Premises Liability Statute Preempts the Common Law Creation of Landowner Duties

The express, unambiguous language of subsection (2) of Colorado's premises liability statute evidences the General Assembly's intent to establish a comprehensive and exclusive specification of the duties landowners owe to those injured on their property. Subsection (2)[10] is specific in its terms and without ambiguity or qualification. By using the language "any civil action brought against a landowner by a person who alleges injury occurring while on the real property of another," the General Assembly indicated its intent to completely occupy the field and supercede the existing law in the area. *Cf. Van Waters,* 840 P.2d at 1076 (construing similar all-inclusive language in the collateral source statute as abrogating the common law).

In addition, when the General Assembly used the language "only as provided in subsection (3)," it reiterated its intent to be comprehensive and exhaustive. This language, coupled with the precisely drawn landowner duties in subsection (3), leaves no room for application of common law tort duties. While the General Assembly did not use the word "duty" in subsection (3), the status classifications in the subsection necessarily and clearly delineate the duty a landowner owes an injured trespasser, licensee, or invitee.[11] Thus, a landowner owes a trespasser, who "may recover only for damages willfully or deliberately caused by the landowner," the duty not to willfully or deliberately cause damages to a trespassing party.

Similarly, the premises liability statute's classification of the duty owed licensees and invitees is also complete and exclusive. Under the statute, a landowner owes a licensee

the duty to exercise reasonable care regarding known dangers created by the landowner and to warn of known dangers not created by the landowner that are not ordinarily present on the particular type of property involved. Furthermore, a landowner owes an invitee the duty to exercise reasonable care in protecting against known dangers or those which the landowner should have known. Since these are the "only" situations under which a trespasser, licensee, or invitee may recover, the statute's definition of landowner duty is complete and exclusive, fully abrogating landowner common law duty principles. As such, the plain language preempts prior common law theories of liability, and establishes the statute as the sole codification of landowner duties in tort.

The operational mechanism of the statute further demonstrates the General Assembly's intent to preempt common law tort duty analyses. At common law the existence of a duty was a question of law to be determined by the court. *E.g., Cary,* 68 P.3d at 465. Under the premises liability statute, the only issue of law to be determined by the court is the classification of the injured plaintiff; liability and damages are questions of fact to be determined by the finder of fact. § 13–21–115(4). In keeping with our responsibility to give effect to every word and term contained within the statute, if possible, *Cacioppo,* 92 P.3d at 463, a judge's common law obligation to determine the existence of landowner duties is inconsistent with the limited role the statute assigns the judge, and would impermissibly enlarge the role of the court beyond that indicated in the statute's plain language.

Since the language of the statute is clear and unambiguous on its face, we need not look beyond its plain terms, *Garhart,* 95 P.3d at 591, and must apply the statute as written, *In re 2000–2001 Dist. Grand Jury,* 97 P.3d at

---

10. *See supra* Part II.B.

11. Although it does not analyze subsections (2) and (3) to the extent we do today, see our decision in *Springer v. City and County of Denver,* 13 P.3d 794, 803–05 (Colo.2000), where we characterized the statutory responsibilities as a "duty" imposed upon the landowner. *See also Sofford v. Schindler Elevator Corp.,* 954 F.Supp. 1459, 1461

(D.Colo.1997) ("[T]he statute establishes two separate elements for landowner liability [to invitees]: (1) breach of a duty to use reasonable care to protect against a danger on the property, and (2) actual or constructive knowledge of the danger.") (citing *Jules v. Embassy Props., Inc.,* 905 P.2d 13, 15 (Colo.App.1995)) (emphasis added).

924. Even so, our construction of the statute as preemptive and exhaustive is consistent with case law from the court of appeals and the observations of authoritative Colorado tort commentators. Several panels of the court of appeals have reached the conclusion that the premises liability statute is the exclusive remedy available for injured parties against landowners. *See Henderson,* 70 P.3d at 613 (in slip and fall negligence action construing scope of "landowner" under premises liability statute, court explained that "premises liability act ... provides the exclusive remedy against a landowner for injuries sustained on the landowner's property") (citations omitted); *Teneyck v. Roller Hockey Colorado, Ltd.,* 10 P.3d 707, 709 (Colo.App. 2000) (where injured sports spectator brought negligence action against facility owner, court held that "General Assembly has enacted the premises liability statute, which provides the sole means of recovery for a plaintiff against a landowner"); *Thornbury,* 991 P.2d at 340 (in negligence action involving statutory immunity, court noted that "plaintiff may recover against a landowner only pursuant to ... premises liability statute[ ] and not under any other theory of negligence, general, or otherwise"); *Casey v. Christie Lodge Owners Ass'n,* 923 P.2d 365, 367–68 (Colo.App.1996) (affirming summary judgment against plaintiff because "standards of care for landowners set forth in [premises liability statute] apply in *any civil action* brought against a landowner by a person who alleges injury occurring while on the real property of another and by reason of the condition of such property, or activities conducted or circumstances existing on such property" and plaintiff did not allege any statutory landowner duty); *see also Calvert v. Aspen Skiing Co.,* 700 F.Supp. 520, 522 (D.Colo.1988) (premises liability statute "abrogates all common law claims for negligence"); *Sofford,* 954 F.Supp. at 1461

("[L]anguage [in subsection (2) ] is unambiguous ... that [a] plaintiff may recover against [a] landowner ... only pursuant to that statute and not under any other theory of negligence, general or otherwise."). In addition, according to two well-respected commentators:

> No area of tort law was affected more by the 1986 legislative [tort] reforms than was premises liability. Decades of evolution in the common law were swept aside by 1986 House Bill 1205 [the premises liability statute]. That legislation changed the rules to such an extent that Colorado appellate decisions based upon common-law principles are of little or no authority for claims subject to the new legislation.

Grund & Miller, *supra,* § 19.1, at 310; *see also* Noyes, *supra,* at 71–72 (discussing the statute's classifications as defining landowner duties).

▆▆▆ In summary, while a statute must generally be taken subject to the common law, *Bradley,* 8 Colo. at 604, 9 P. at 786, our analysis of the premises liability statute convinces us that the General Assembly clearly and manifestly expressed its intent, through the plain language of the statute, to abrogate the common law of landowner duties, *see Vaughan,* 945 P.2d at 408.[12] A countervailing construction would fail to give effect to the preemptive language in subsection (2), the clear delineation of landowner duties in subsection (3), and the limited role of the court in subsection (4), rendering it a nullity—a result we seek to avoid.

## C. The General Assembly Did Not Specifically Adopt the Common Law Open and Obvious Danger Doctrine

▆▆▆ Where the interaction of common law and statutory law is at issue, we acknowledge and respect the General Assembly's authority to modify or abrogate common law.

---

12. We note that this holding does not upset the common law no duty rule in sidewalk injury cases that "property owners owe no duty to pedestrians to keep the sidewalks abutting their property reasonably clear of naturally accumulating snow and ice." *See, e.g., Bittle v. Brunetti,* 750 P.2d 49, 51–52 n. 2 (Colo.1988) (citing numerous pre-premises liability statute cases involving plaintiffs injured on slippery public side-

walks). In those cases, the defendants did not own the sidewalk, just the adjacent property. Thus, in *Bittle,* for example, the premises liability statute, though not yet in effect, would have been inapplicable because the plaintiff was not injured "while on the real property of" the landowner defendant, but on a publicly owned sidewalk. *See* § 13–21–115(2).

*Beach,* 74 P.3d at 4; *see also* § 2–4–211, C.R.S. (2004) ("The common law . . . shall be the rule of decision, and shall be considered as of full force until repealed by legislative authority."). Here, the General Assembly abrogated the common law with respect to landowner duties when it passed Colorado's premises liability statute. Having chosen to exclusively set forth the nature and extent of duties owed by a landowner, the General Assembly also abrogated the common law regarding defenses to the existence of such duties. Consequently, while a landowner may argue that he owes no duty to an injured plaintiff, he may do so only pursuant to the defenses set forth in the statute. For that reason, we now must determine whether the General Assembly specifically intended the open and obvious danger doctrine to be one of these defenses. We conclude that it did not.

First, we look to the plain language of the statute. While the General Assembly did not use the word "defenses" in subsection (3) when it precisely defined landowner duties, a landowner clearly can argue that he owed no duty under the statute. For example, in a premises liability suit by a licensee, a land-

owner can argue that: he did not create the danger; he did not actually know of the danger; the danger was not one ordinarily present on the landowner's type of property; he exercised reasonable care or did not unreasonably fail to do so; and, he warned the invitee or did not unreasonably fail to do so. *See* § 13–21–115(3)(b).[13] Moreover, a landowner even could claim that he is not a landowner as defined by the statute, thereby owing no duty at all. *See* § 13–21–115(1).

Conversely, both as initially enacted in 1986, see *Gallegos,* 779 P.2d at 859, and as amended in 1990, the language chosen to describe a landowner's duties is nowhere qualified by a reference to "open and obvious dangers" or any substantially similar phrase or concept. Since the General Assembly is presumed to have knowledge of existing case law, *e.g., Pierson,* 48 P.3d at 1219, had the General Assembly intended to limit the preemption of landowner liability by retaining the open and obvious danger doctrine, it could have done so. Particularly in light of the *Smith* case, 726 P.2d 1125, which was decided only a few years prior to the 1990 amendments, and its many predecessors,[14]

---

**13.** Similarly tracking the statutory language, a landowner could argue that he owed no duty to an injured trespasser or invitee. *See* § 13–21–115(3)(a), (c) (discussed above in Part III.B.).

**14.** See, for example, the following cases which illustrate the extensive case law on pre-premises liability statute landowner tort duties: *Hennesy v. Tina Marie Homes, Inc.,* 153 Colo. 572, 574–75, 388 P.2d 758, 759 (1963) (potential homebuyer that fell backwards on alleged open and obvious step-down from kitchen to family room while examining model home was barred from recovery because we did not want to make defendant "an insurer of the safety of those who inspect his 'show' homes," or "mere happening of an accident [to] raise[] a presumption of negligence" where there was "an appreciable risk of harm" and injury only "might" have occurred); *King Soopers, Inc. v. Mitchell,* 140 Colo. 119, 125, 342 P.2d 1006, 1009 (1959) (rejecting argument that alleged open and obvious ice patches in supermarket parking lot alone discharged property owner's legal duty to exercise reasonable care towards business invitees because, *inter alia,* " '[a]ll of the circumstances . . . must be taken into account' ") (quoting William L. Prosser, *Handbook of the Law of Torts,* § 78, at 459 (2d ed.1955)); *Webb,* 133 Colo. at 459, 463–65, 296 P.2d at 1036–37, 1039–40 (plaintiff severely injured after diving into shallow end of public

swimming pool was barred from recovery because defendant "[wa]s not chargeable with negligence for failure to foresee a possible injury rather than a probable one"); *Phipps v. Mitze,* 116 Colo. 288, 292, 180 P.2d 233, 235 (1947) (landowner was not liable for death of trespassing nine-year-old boy who drowned in artificial pond on defendant's property because "danger was open and apparent," and "minor involved had been warned of the danger"); *Brown v. Martin Marietta Corp.,* 690 P.2d 889, 891–92 (Colo.App.1984) (plaintiff slipped on office paper piles while emptying defendant's trash, and summary judgment was improper "where the likelihood of injury is not lessened by knowledge of the condition" because office paper was unreasonably dangerous, plaintiff had no choice but to encounter it, and defendant could have abated the dangerous condition); *Burchinal,* 41 Colo. App. at 492, 586 P.2d at 1013–14 (defendants owed plaintiff injured while using trampoline no duty to warn of dangers plaintiff "already understood and appreciated" because "[w]here the potential for danger is readily apparent, a warning of the obvious is not necessary") (citing *Bookout v. Victor Comptometer Corp.,* 40 Colo.App. 417, 419, 576 P.2d 197, 198 (1978) ("[T]he potential for danger inherent in a BB gun is readily apparent and a warning for the obvious is not a requirement of the doctrine of products liability.")).

the General Assembly's failure to include any textual reference to open and obvious dangers is particularly enlightening. ·

The absence of a statutory reference to the open and obvious danger doctrine is especially instructive when contrasted with the General Assembly's inclusion of the attractive nuisance doctrine, another common law defense to the imposition of landowner duties. Indeed, the General Assembly expressly provided for the attractive nuisance doctrine. *See* § 13–21–115(2).[15] As a result, we must construe the premises liability statute to mean that the inclusion of attractive nuisance necessarily excludes the open and obvious danger doctrine. *See Lunsford,* 908 P.2d at 84.

Consistent with this analysis, we are persuaded that the reasoning expressed in *Teneyck v. Roller Hockey Colorado, Ltd.,* 10 P.3d at 709–10, as opposed to that of the court of appeals in this case, represents a correct reading of the statute. In *Teneyck* the plaintiff was struck by an errant hockey puck while a spectator at a roller hockey game. *Id.* at 708. The owner of the hockey facility sought summary judgment in the ensuing negligence action, arguing that under the common law he owed no duty to sporting event spectators because the risks of attending such events are "common, frequent, and expected during the activity in question." *Id.* (citing *Jones v. Three Rivers Mgmt. Corp.,* 483 Pa. 75, 394 A.2d 546 (1978); *Pestalozzi v. Phila. Flyers, Ltd.,* 394 Pa.Super. 420, 576 A.2d 72 (1990)). The court of appeals rejected the defendant's attempt to engraft this common law no duty defense onto

the premises liability statute, holding that "[b]ecause the General Assembly has undertaken expressly to define the scope of landowner liability through its enactment of the premises liability statute, [the] act provides the framework for the analysis of plaintiff's claims here." *Id.* at 710. Highlighting the existence of statutory premises liability exceptions for baseball park owners,[16] the court of appeals further declared: "it is apparent that, had the General Assembly wished to provide an exemption from civil liability for other spectator sports or activities, it could have done so." *Id.; see also Lunsford,* 908 P.2d at 84; *cf. Pierson,* 48 P.3d at 1219–21 (General Assembly did not intend to include common law "exclusive possession" requirement within premises liability statute's definition of "landowner").[17]

## IV. Conclusion

In Colorado's premises liability statute, the General Assembly intended to establish an exclusive specification of the duties landowners owe to those injured on their property. As such, common law landowner duties do not survive its enactment.

Having chosen to exclusively set forth the nature and extent of duties owed by a landowner, the General Assembly also abrogated the common law regarding defenses to the existence of such duties. While a landowner may argue that he owes no duty to an injured plaintiff, he may do so only pursuant to the defenses set forth in the statute.

Nothing in the plain language of the statute, either expressly or by clear implication,

---

**15.** The statutory exception provides that "[t]his subsection (2) shall not be construed to abrogate the doctrine of attractive nuisance as applied to persons under fourteen years of age."

**16.** For example, the Colorado Baseball Spectator Safety Act of 1993 provides that "[s]pectators of professional baseball games are presumed to have knowledge of and to assume the inherent risks of observing professional baseball games, insofar as those risks are obvious and necessary," and this assumption of the risk "shall be a complete ... defense to a suit against an owner by a[n injured] spectator." § 13–21–120(4)(a), (b), C.R.S. (2004).

**17.** In the opinion below, the court of appeals distinguished *Teneyck* on the ground that it "ad-

dressed premises liability issues in connection with commercial, rather than private, use of property." *Vigil,* 81 P.3d at 1088–89. There is no such limitation in Colorado's premises liability statute. *See, e.g.,* § 13–21–115(1) ("For the purposes of this section, "landowner" includes, *without limitation,* an authorized agent or a person in possession of real property and a person legally responsible for the condition of real property or for the activities conducted or circumstances existing on real property.") (emphasis added). Furthermore, we have previously rejected a commercial/private property distinction in the premises liability context. *See Bittle,* 750 P.2d at 54 ("The plaintiff does suggest that we distinguish between commercial and noncommercial property owners .... However, ... there is no legitimate basis for this distinction.").

incorporates the common law defense of open and obvious dangers. Therefore, we hold that the common law open and obvious danger doctrine does not survive the enactment of Colorado's premises liability statute.

Finding such, we further hold that the trial court erroneously considered the Franklins' common law open and obvious danger defense to their statutory duty as landowners, and that the trial court's grant of summary judgment in this case was improper. The Franklins' duty toward Vigil, if any, must be determined exclusively under Colorado's premises liability statute, without regard to the common law. Accordingly, we reverse the decision of the court of appeals and remand this case to the court of appeals with instructions to remand to the trial court for proceedings consistent with this opinion.

The judgment of the court of appeals is reversed.

Justice KOURLIS dissents, Justice HOBBS and Justice COATS join in the dissent.

Justice KOURLIS dissenting.

We granted certiorari to consider whether the common law "open and obvious" doctrine survived the enactment of Colorado's premises liability statute, section 13–21–115, C.R.S. (2004), and whether the doctrine supported the grant of summary judgment against the plaintiff, Vigil. The majority now holds that no common law landowner principles survive the enactment of the premises liability statute, and hence that the common law defense of "open and obvious danger" is no longer applicable.

Because I read the express purpose of the premises liability statute as the protection of private property rights, and because the common law doctrine of "open and obvious danger" is completely consistent with that purpose, I would agree with both the trial court and court of appeals' decisions in this case. Accordingly, I respectfully dissent.

## I. Background

Until 1971, landowner liability turned on the status of the plaintiff—invitee, licensee, or trespasser. *See, e.g., Husser v. School*

*Dist. No. 11*, 159 Colo. 590, 413 P.2d 906 (1966). In that year, this court overturned that formula and reinstated general negligence principles for assessment of landowner liability to someone injured on his or her property. *Mile High Fence Co. v. Radovich*, 175 Colo. 537, 489 P.2d 308 (1971).

In 1986, the general assembly reenacted a premises liability statute to resurrect in part the liability scheme that this court overturned in 1971. Additional amendments were passed in 1991. *See*, ch. 109, sec. 1, § 13–21–115, 1986 Colo. Sess. Laws 683; ch. 107, sec.1, § 13–21–115, 1990 Colo. Sess. Laws 867. The purpose of the modern premises liability statute is clear and unequivocal: namely, to promote private property rights and "protect landowners from liability in some circumstances when they were not protected at common law." § 13–21–115(1.5)(d)–(e), C.R.S. (2004). A fortiori, the statute narrows the landowner's exposure to liability. *Pierson v. Black Canyon Aggregates, Inc.*, 48 P.3d 1215 (Colo.2002).

The court of appeals has since held that section 13–21–115 provides the sole remedy to injured persons, a contention supported by the plain language of the statute. *See* § 13–21–115(2), C.R.S. (2004) ("the landowner shall be liable *only* as provided in subsection (3) of this section.") (emphasis added). *See also Henderson v. Master Klean Janitorial, Inc.*, 70 P.3d 612, 613 (Colo.App.2003), *Thornbury v. Allen*, 991 P.2d 335, 340 (Colo. App.1999).

We approach the case before the court today, then, with two clear principles: first, that the landowner liability act sets forth the sole basis for private landowner liability; and second, that the purpose of the act is to constrain and limit such liability. Within the reach of those two principles, we must decide whether a common law defense favorable to landowners survives enactment of the legislation. Although the clear language of subsection (2) of the premises liability statute establishes the only situations in which a trespasser, licensee, or invitee may recover, it does not plainly limit defenses available to the landowner in such an action. The majority concludes that the precise and limited

language of the statute delineating duties of a landowner and eliminating other such duties that might exist at common law has a similar effect with respect to defenses. I disagree.

## II. Abrogation of Common Law

The general assembly has the authority to modify or abrogate common law. *See* § 2–4–211, C.R.S. (2004), *Beach v. Beach,* 74 P.3d 1, 4 (Colo.2003). To exercise that authority, the general assembly must clearly express its intent to do so. *Preston v. Dupont,* 35 P.3d 433, 440 (Colo.2001). Finally, statutes in derogation of the common law must be strictly construed in favor of the person against whom the provisions are intended to apply. *Id.* Absent such explicit abrogation, statutes must be deemed subject to the common law. *Bradley v. People,* 8 Colo. 599, 604, 9 P. 783, 786 (1886).

Contrary to the majority's holding, I would conclude that the general assembly did not clearly abrogate the open and obvious danger doctrine when it enacted the premises liability statute.

## III. Open and Obvious Doctrine

The "open and obvious danger" doctrine was viable under both the common law premises liability scheme and the general negligence scheme. *Smith v. City and County of Denver,* 726 P.2d 1125 (Colo.1986) (general negligence scheme), *Webb v. Thomas,* 133 Colo. 458, 296 P.2d 1036 (1956) (common law premises liability scheme).

Although the open and obvious doctrine does not bar recovery as a matter of law, a landowner may avoid liability for injuries caused by open and obvious dangers based upon the rationale that where the potential for danger is readily apparent a warning of the obvious is unnecessary. *Smith,* 726 P.2d at 1127. In short, the doctrine establishes the notion that a landowner has a duty to warn of dangerous conditions on his or her land that an entrant would not otherwise discover or realize.

## IV. Establishing Duty

In a negligence action, the plaintiff must establish four elements: duty, breach, harm, and causation. Duty is a threshold element that presents a question of law to the court. *Smith,* 726 P.2d at 1127. If the court concludes as a matter of law that no duty existed, a negligence action cannot be maintained. Determining whether a duty exists requires that a court consider various factors including the risk involved and the foreseeability of harm. *Campbell v. Burt Toyota–Diahatsu, Inc.,* 983 P.2d 95, 97 (Colo.App.1999).

Under the premises liability statute, the landowner's duty correlates with the status of the injured party. The court must first determine the classification of the injured plaintiff in order to trigger the appropriate level of duty. Generally, the landowner must exercise reasonable care to protect lawful visitors from dangers of which the landowner was actually aware. § 13–21–115(3). Although landowners have a duty to exercise reasonable care in protecting individuals who enter upon their lands, they are not absolute insurers of the safety of those individuals. Therefore, the "reasonableness" of the landowners conduct is dependent upon the *type* of danger and *foreseeability* of the risk to the plaintiff. Under the common law, if the danger is open and obvious, the land owner is under no duty to warn as a matter of law.

## V. Teneyck

The majority offsets the reasoning of the court of appeals in *Teneyck v. Roller Hockey Colorado, Inc.,* 10 P.3d 707 (Colo.App.2000) against the court of appeals opinion here and concludes that the *Teneyck* reasoning supports the result it reaches today. Like the court of appeals below, I read *Teneyck* to be limited to the commercial context. In *Teneyck,* the court of appeals declined to apply the "no duty" rule for injuries that are common, frequent and expected during the activity in question to a spectator's claim of risk from a puck at a hockey game. The court of appeals noted that the general assembly had specifically codified its intent to apply that doctrine to a variety of other sports or activities, and the absence of such a specific statute in the hockey context convinced the court

that the general assembly did not intend a no duty exemption for hockey.

In the court of appeals' opinion below, the panel (including one judge who participated in *Teneyck* ), distinguished *Teneyck* on the grounds that it arose in a commercial context and "the plaintiff has not directed our attention to any statutes, comparable to those cited in *Teneyck,* indicating that the General Assembly intended to remove the protection afforded landowners by the open and obvious danger doctrine in connection with the myriad *private* purposes to which land may be put." *Id.* at 1084 (emphasis added). I agree that the existence of statutes codifying the 'no duty' rule as to some sporting events or other activities has little persuasive impact here, where the question is whether the general assembly intended to afford private landowners the right to assert the no duty rule in a negligence action. I cannot agree that by limiting the causes of action, the general assembly also implicitly limited all defenses thereto.

## VI. Application

The court of appeals held, as a matter of law, that the landowners had no duty to warn Vigil of the risk from diving into an above ground shallow swimming pool on their land because it presented an open and obvious danger. The trial court held similarly in granting the defendants' motion for summary judgment.

The majority of jurisdictions hold that an above ground pool is an open and obvious danger. *See Hemphill v. Johnson,* 230 Ga. App. 478, 497 S.E.2d 16 (1998), *O'Sullivan v. Shaw,* 431 Mass. 201, 726 N.E.2d 951 (2000), *Barham v. Knickrehm,* 277 Ill.App.3d 1034, 214 Ill.Dec. 721, 661 N.E.2d 1166 (1996), *Donacik v. Pool Mart, Inc.,* 270 A.D.2d 921, 705 N.Y.S.2d 784 (N.Y.App.Div.2000), *Long v. Manzo,* 452 Pa.Super. 451, 682 A.2d 370 (1996), *Griebler v. Doughboy Recreational, Inc.,* 160 Wis.2d 547, 466 N.W.2d 897 (1991), *Glittenberg v. Doughboy Recreational, Inc.,* 441 Mich. 379, 491 N.W.2d 208 (1992), *but see, Corbin v. Coleco Industries, Inc.,* 748 F.2d 411 (7th Cir.1984), *Leonard v. Pitstick Dairy Lake and Park, Inc.,* 124 Ill.App.3d 580, 79 Ill.Dec. 740, 464 N.E.2d 644 (1984).

Indeed, Colorado has applied the open and obvious danger doctrine in cases involving injuries sustained from diving into shallow water. *Smith,* 726 P.2d at 1125, *Webb v. Thomas,* 133 Colo. 458, 296 P.2d 1036 (1956), *Phipps v. Mitze,* 116 Colo. 288, 292, 180 P.2d 233, 235 (1947) (danger of reservoir was open and apparent therefore landowner not liable for child's drowning).

Vigil testified he was attempting to perform a shallow racing-style dive into the pool. By itself, this is some indication that he, too, was aware of the risk associated with diving into shallow water. *See Glittenberg,* 491 N.W.2d at 208 ("fact that … plaintiffs acknowledged the necessity to perform a shallow dive simply underscores the conclusion that the risk of diving in shallow water is open and obvious").

Applying the open and obvious doctrine to this case, I would conclude that the landowner had no duty to warn Vigil of the risk of diving into an above ground swimming pool and summary judgment was appropriate.

## VII. Conclusion

The premises liability statute was enacted to protect landowners. By defining and limiting the circumstances in which a landowner may be liable to someone entering upon his or her land, the general assembly did not intend, by my reading, to abrogate defenses that would otherwise be available to that landowner at common law. Indeed, those defenses are consistent with the very essence of the statute and hence should be honored by the courts. Accordingly, I would affirm the court of appeals, and respectfully dissent from the majority's opinion.

I am authorized to state that Justice HOBBS and Justice COATS join in this dissent.