**Dale WINNINGHAM, Plaintiff,**

v.

**NORTH AMERICAN RESOURCES CORPORATION, et al., Defendants.**

**No. C–1–91–447.**

United States District Court, S.D. Ohio W.D.

April 9, 1992.

---

James Burdette Helmer, Jr., Helmer, Lugbill & Whitman Co., Cincinnati, OH, Meredith Lynn Lawrence, Lawrence & Schletker, Covington, KY, for plaintiff.

Frederick Mason Morgan, Jr., Montgomery, Rennie & Jonson, Arthur Herbert Schlemmer, Barron, Peck & Bennie, John Charles Scott, Faulkner & Tepe, Cincinnati, OH, for defendants Robert B. Sexton and North American Resources Corp.

Philip John Marsick, Jr., McCaslin, Imbus & McCaslin, Cincinnati, OH, for defendant I Deutch & Sons Inc.

Todd Matthew Powers Rendigs, Fry, Kiely & Dennis, Cincinnati, OH, for defendant Mose Cohen & Sons, Inc.

## ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

SPIEGEL, District Judge.

This matter is before the Court on the Defendant Mose Cohen & Sons, Inc's ("Mose Cohen") supplemental memorandum in support of its motion for summary judgment (doc. 49), the Defendant North American Resource Corporation's ("NARC") memorandum in support of its motion for summary judgment (doc. 50), the Plaintiff's supplemental response to the Defendants' motion for summary judgment (doc. 56), the Defendant Mose Cohen's motion in support of its motion for summary judgment (doc. 57), the Defendant I. Deutch & Sons, Inc. d/b/a Cincinnati Auto Shredders' ("Deutch") motion for summary judgment (doc. 70), the Plaintiff's response (doc. 76), the Defendant Mose Cohen's motion for summary judgment (doc. 78), the Plaintiff's response (doc. 85), the Defendant Mose Cohen's reply (doc. 90) and supplemental reply (doc. 99), the Defendants' joint motion for summary judgment (doc. 104), and the Plaintiff's response (doc. 106).

The basic issues before this Court are whether we have subject matter jurisdiction, and if we do have jurisdiction, whether the Defendants owed a duty to the Plaintiff.

## BACKGROUND

The Plaintiff, Dale Winningham, worked at North American Terminal ("NAT")[1] as a laborer unloading cargo from barges and rail cars. On April 28, 1988, Mr. Winningham was electrocuted, resulting in the loss of his hands and forearms, as well as other injuries. The accident occurred at 3291 Southside Avenue. 3291 Southside Avenue is industrial property with three docks on the Ohio River in Cincinnati. The property extends northward from the Ohio river and is bisected east to west by Southside Avenue, a road running parallel to the river. Railroad tracks parallel Southside Avenue on the northern border of the property.

On the day of his injury, Mr. Winningham was working on unloading coal cargo from barge C–330, that was docked at 3291 Southside Avenue. In unloading the barges, workers used a conveyor along Southside Avenue. The conveyor had been moved across Southside Avenue between 150 and 200 times during the last year in order to aid in unloading material from the barges that had docked at 3291 Southside Avenue. Sometimes, the conveyor would become entangled in the quadraplex line, an electrical powerline. When the conveyor became entangled in the quadraplex line, the quadraplex line power was turned off. The quadraplex line then had to be moved manually over the conveyor in order to allow the conveyor to pass.

At approximately 7:45 on April 28th, Mr. Winningham, along with other employees of NAT, were moving the conveyor across Southside Avenue when the top of the conveyor became entangled in the quadraplex powerline. As a result, Mr. Winningham's supervisor, Mark Wetterich, instructed Mr. Winningham and his fellow employee, Robert Johnson, to shimmy up the conveyor and free the quadraplex line. As always, the quadraplex line had been shut off.

1. NAT is a wholly owned subsidiary of NARC.

Mr. Winningham climbed up the conveyor and positioned himself above the quadraplex line while standing on the conveyor. Located 5′2″ above the quadraplex line was a 27,000 volt Cincinnati Gas & Electric transmission line. As Mr. Winningham began to lift the quadraplex line to free it from the conveyor, he straightened his body and came into contact with the Cincinnati Gas & Electric transmission line. As a result, he received a high voltage electric shock and was thrown approximately 25 to 30 feet to the ground.

Mr. Winningham was severely injured. As a result, his forearms and hands were amputated, and he suffered severe burns to his body.

At the time of Mr. Winningham's injury, Cincinnati Auto Shredders ("CAS") owned the property where the accident occurred. CAS is an Ohio partnership, consisting of general partners Mose Cohen and Deutch. In 1985, CAS entered into an installment land contract with NARC to sell the property it owned at 3291 Southside Avenue. The contract provided that title would pass from CAS to NARC when NARC made its final payment on the purchase price, which was anticipated to be in 1987.

In addition, under the terms of the installment land contract, CAS retained several rights over the property: (1) CAS kept the right to mortgage the property; (2) NARC was prohibited from incumbering the property in any manner without the written consent of CAS; (3) NARC had to maintain the insurance, subject to approval by CAS, for all liability related to the use of the docks for loading and unloading; (4) NARC had to maintain worker's compensation for those working on the property; (5) CAS retained the right to enter and inspect the property; (6) NARC was required to make all repairs to the property as specified by CAS; (7) NARC was prohibited from assigning its rights under the contract without the written consent of CAS; and, (8) CAS retained an easement to load, unload, and use any of the docks on the property without charge until two years after NARC made its final payment to CAS under the installment land contract. Although CAS held these rights, NARC was the primary user of the property.

After signing the installment land contract with CAS, NARC began to experience financial difficulties. NARC consequently defaulted on its obligations under the contract. On February 10, 1987, CAS filed a complaint for eviction and money damages in the Hamilton County Court of Common Pleas. On April 1, 1988, NARC declared Chapter 11 bankruptcy. Subsequently, CAS asked the bankruptcy court for relief from the automatic stay so that it could continue its eviction against NARC. In the bankruptcy hearing, CAS argued that whatever rights NARC may have had in 3291 Southside Avenue, those rights terminated upon the filing of an order of eviction and an accompanying quit-claim deed. U.S. Bankruptcy Judge Perlman held that no meeting of the minds existed as to the material provisions in the installment land contract, and therefore the contract was unenforceable. *North American Resources, Inc. v. Cincinnati Auto Shredder*, Case No. 1–88–00170 (Sept. 7, 1988).

In addition, several other facts indicate the extent of CAS's control over 3291 Southside Avenue:

1. Before Mr. Winningham's accident, John Wetterich, Chief Executive Officer of NARC, made electrical wiring improvements at 3291 Southside Avenue. Subsequently, a truck had knocked down the quadraplex powerline. As a result, John Wetterich had restrung personally the quadraplex powerline to prevent trucks from knocking down the wires again. As restrung, the quadraplex powerline ran diagonally across Southside Avenue. Tomme Schwab, a principal of Mose Cohen, knew that Mr. Wetterich had restrung the quadraplex line.

2. CAS used the electricity from the quadraplex line installed by John Wetterich.

3. CAS used the property as a drop facility for stockpiling its metal products and loading them onto barges.

4. Mose Cohen used the property on a monthly basis to load and unload barges.

5. CAS trucks came onto the property daily.

6. Laborers for CAS worked on the property.

7. On approximately March 28, 1988, principals of Deutch inspected the property.

8. Deutch had a key to the premises. When NARC tried to lock the gates to the property without providing keys to the CAS general partners, CAS cut the locks off the gates.

## STANDARD OF REVIEW

The narrow question that we must decide on a motion for summary judgment is whether there exists a "... genuine issue as to any material fact and [whether] the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The Court cannot try issues of fact on a Rule 56 motion, but is empowered to determine only whether issues exist that should be tried. *In re Atlas Concrete Pipe, Inc.*, 668 F.2d 905, 908 (6th Cir.1982).

The moving party "has the burden of showing *conclusively* that there exists no genuine issues as to a material fact and the evidence together with all inferences to be drawn therefrom must be read in the light most favorable to the party opposing the motion." *Smith v. Hudson*, 600 F.2d 60, 63 (6th Cir.) (emphasis in original), *cert. denied*, 444 U.S. 986, 100 S.Ct. 495, 62 L.Ed.2d 415 (1979). Moreover, "while the movant's papers are to be closely scrutinized, those of the opponent are to be viewed indulgently." *Id.* at 63. "[T]he District Court [is] obligated to consider not only the materials specifically offered in support of the motion, but also all 'pleadings, depositions, answers to interrogato-

ries, and admissions' properly on file and thus properly before [the] court." *Id.* (quoting Rule 56(c), Fed.R.Civ.P.).

Summary judgment "must be used only with extreme caution for it operates to deny a litigant his day in court." *Id.* The Supreme Court elaborated upon this standard, in *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986), as follows:

[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial....

*Id.* at 322, 106 S.Ct. at 2552. Summary judgment is not appropriate if a dispute about a material fact is "genuine," that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Nevertheless, conclusory allegations are not sufficient to defeat a motion for summary judgment. *McDonald v. Union Camp Corp.*, 898 F.2d 1155, 1162 (6th Cir.1990).

## DISCUSSION

The Defendants have moved for summary judgment on the grounds that this Court does not have subject matter jurisdiction.[2] The Defendants argue that even if this Court does have subject matter jurisdiction, summary judgment should still be granted because the Defendants did not owe a duty to the Plaintiff as a matter of law. We will treat the Defendants'

2. This matter has a convoluted procedural history. In 1990, NARC and Mose Cohen moved for summary judgment on the grounds that the Court lacked subject matter jurisdiction. The Defendants argued that the Plaintiff was not a seamen under the Jones Act, and therefore, no federal question arose in this lawsuit. The Defendants further argued that no subject matter jurisdiction exists because there is no diversity of citizenship between the parties.

After hearing oral argument, Judge Bertelsman of the Eastern District of Kentucky found

that the Plaintiff was a longshoreman, and therefore could not bring suit under the Jones Act. Doc. 41. Judge Bertelsman also held that the Plaintiff had established *prima facie* diversity jurisdiction. Judge Bertelsman further ordered that the parties file supplemental memoranda addressing whether the court had general maritime jurisdiction and personal jurisdiction. *Id.* Judge Bertelsman found that serious questions existed about personal jurisdiction, and as a result, he transferred the case to this Court. Doc. 58.

grounds for summary judgment individually.

## JURISDICTION

■ The Defendants contend that this Court does not have jurisdiction to hear this case. The federal courts have only limited jurisdiction. A federal court must have jurisdiction over the subject matter and the parties involved before it can consider the merits of the case. *See* Charles Alan Wright, *The Law of the Federal Courts* § 7 (4th ed. 1983); Martin Redish, *Federal Jurisdiction: Tensions in the Allocation of Judicial Power* (2d ed. 1990). The question here is whether this Court has subject matter jurisdiction.

The Plaintiff has asserted subject matter jurisdiction based upon the diversity of the parties and the presence of a federal question. If this Court has jurisdiction based upon diversity jurisdiction, we need not consider whether a federal question arises from this litigation.

### Diversity Jurisdiction

■ Diversity jurisdiction allows a federal court to hear disputes between parties from two different states involving more than $50,000. 28 U.S.C. § 1332 (1991); Charles Alan Wright, *The Law of the Federal Courts* §§ 23–31 (4th ed. 1983). For a court to have diversity jurisdiction, complete diversity must exist between all the plaintiffs and all the defendants. *Napletana v. Hillsdale College*, 385 F.2d 871, 872 (6th Cir.1967); *Strawbridge v. Curtiss*, 7 U.S. (3 Cranch) 267, 2 L.Ed. 435 (1806). Diversity jurisdiction was designed originally to protect out-of-state defendants from local prejudice in state courts. Charles Alan Wright, *The Law of the Federal Courts* § 23, at 128 (4th ed. 1983).

■ The party invoking federal jurisdiction bears the burden of proving diversity of citizenship. *Ray v. Bird & Son and Asset Realization Co.*, 519 F.2d 1081, 1082 (5th Cir.1975). A court must determine a litigant's citizenship based upon his or her domicile. *Stifel v. Hopkins*, 477 F.2d 1116, 1120 (6th Cir.1973). For a person to be domiciled within that state, the person must be physically present in that state and must have either the intention to make his home there indefinitely or the absence of an intention to make his home elsewhere. *Id.*

■ A court must determine the citizenship of a person at the time the plaintiff commences the lawsuit. *Ray*, 519 F.2d at 1082. The Federal Rules of Civil Procedure provides that a civil action commences with the filing of the Complaint. Fed. R.Civ.P. 3. Thus, if diversity of citizenship does not exist when the action is originally commenced, it cannot be created later by a change of domicile. *Lyons v. Weltmer*, 174 F.2d 473 (4th Cir.1949), *cert. denied*, 338 U.S. 850, 70 S.Ct. 93, 94 L.Ed. 520 (1949). Similarly, if diversity exists at the time the plaintiff commences the lawsuit, then federal jurisdiction is not defeated if one party subsequently becomes a citizen of the same state as his or her opponent. *See Louisville, New Albany & Chicago Railway Co. v. Louisville Trust Co.*, 174 U.S. 552, 19 S.Ct. 817, 43 L.Ed. 1081 (1899).

The rationale for determining diversity at the commencement of a lawsuit is that "... the sufficiency of jurisdiction should be determined once and for all at the threshold and if found to be present then should continue until final disposition of the action." *Dery v. Wyer*, 265 F.2d 804, 808 (2d Cir.1959). Thus, the litigants can plan their litigation strategy without being concerned that a court may lose subject matter jurisdiction subsequently. *See* Charles Alan Wright, Arthur R. Miller, and Edward Cooper, 13B *Federal Practice and Procedure* § 3608, at 452 (2d ed. 1984) (citing this and other policy advantages in determining diversity at the commencement of a suit).

■ Furthermore, the addition of a nondiverse party does not divest the court of jurisdiction. The Supreme Court recently stated that "[d]iversity jurisdiction, once established, is not defeated by the addition of a nondiverse party to the action." *Freeport–McMoRan, Inc. v. K N Energy, Inc.*, 498 U.S. 426, ——, 111 S.Ct. 858, 860, 112 L.Ed.2d 951 (1991), reversing on other

grounds 907 F.2d 1022, 1025 (10th Cir.1990) ("... if diversity jurisdiction was established at the time the complaint was filed, the substitution of a nondiverse party to carry on the lawsuit will not affect the court's jurisdiction").

Nevertheless, one court used a different analysis. In *Louwers v. Knight–Ridder Newspapers, Inc.*, 570 F.Supp. 1211, 1212–13 (E.D.Mich.1983), the court determined that "... when a[n amended] complaint is filed against a new defendant, the subject matter jurisdiction over that defendant must be determined as of that date and not as of the date of filing of the original complaint." However, the *Louwers* court failed to cite authority for this proposition, and no court has ever followed the *Louwers* decision on this issue.[3]

Now we turn our attention to the case before this Court. On November 17, 1988, the date upon which Mr. Winningham commenced this lawsuit, Mr. Winningham was a resident of Ohio. The Defendant Robert Sexton, was a resident of Kentucky.

In his original Complaint, the Plaintiff based federal jurisdiction upon diversity jurisdiction and federal question jurisdiction (the Jones Act and the Longshoreman and Harbor Workers Compensation Act). Doc. 1. Both parties agree that diversity jurisdiction existed when Mr. Winningham originally filed his lawsuit. The thrust of Mr. Winningham's original Complaint was that Robert Sexton, the head of NAT, Mr. Winningham's employer, had failed in his obligation to provide compensation benefits for Mr. Winningham under the Longshoreman and Harbor Workers Compensation Act.

On March 17, 1989, Mr. Winningham filed his first Amended Complaint, naming NARC, an Ohio corporation, as an additional Defendant. Doc. 4. Mr. Winningham based jurisdiction for his lawsuit upon general maritime law, in addition to the federal statutes mentioned above, as well as upon diversity jurisdiction. Mr. Winningham further alleged that he had changed his residence to an apartment in Kentucky.

Then, on April 27, 1990, Mr. Winningham filed a second Amended Complaint. Doc. 20. This Complaint named Deutch and Mose Cohen, both citizens of Ohio, as Defendants. The Plaintiff contended that he was a Kentucky resident. Mr. Winningham's second Amended Complaint alleged that Deutch and Mose Cohen were negligent as the owners, operators, and controllers of 3291 Southside Avenue where Mr. Winningham was injured.

The Defendants took Mr. Winningham's deposition on August 31, 1990. Mr. Winningham stated in his deposition that he had lived in Kentucky for only three months. Mr. Winningham acknowledged that prior to living in Kentucky he had lived at his father's apartment in Ohio. Therefore, the Defendants argue that on April 17, 1990, the date of his second Amended Complaint, Mr. Winningham was a citizen of Ohio. The Defendants conclude that Mr. Winningham cannot assert diversity jurisdiction because Mr. Winning-

---

**3.** Nevertheless, the *Louwers* decision does prevent a plaintiff's attorney from commencing her lawsuit with diversity jurisdiction and then thwarting the requirement of complete diversity by later amending her complaint to include nondiverse parties. However, in not following *Louwers*, this Court is not condoning a plaintiff acting in bad faith by including nondiverse parties when, at the time of the original complaint, the plaintiff knew that these additional parties would become a part of the lawsuit.

In fact, Congress has prohibited federal courts from exercising jurisdiction where "... any party, by assignment or otherwise, has been improperly or collusively made or joined to invoke the jurisdiction of the court." 28 U.S.C. § 1359. The courts have elaborated upon this Congressional concern, and have disallowed devices which manipulate diversity to the advantage of one of the parties. *See Wecker v. Nat'l Enameling & Stamping Co.*, 204 U.S. 176, 27 S.Ct. 184, 51 L.Ed. 430 (1907) (holding that fraudulent joinder of a defendant against whom the plaintiff has a bona fide claim, but who is a citizen of the same state as the plaintiff, will not defeat removal); *McSparran v. Weist*, 402 F.2d 867 (3rd Cir.1968), *cert. denied*, 395 U.S. 903, 89 S.Ct. 1739, 23 L.Ed.2d 217 (1968) (determining that a party creating diversity, but with no real interest in the litigation, is violative of 28 U.S.C. § 1359); *but see Williamson v. Osenton*, 232 U.S. 619, 34 S.Ct. 442, 58 L.Ed. 758 (1914) (holding that a party may gain access to federal court by changing his domicile even though the party changed his domicile solely out of a desire to sue in federal court).

ham, as an Ohio Plaintiff, cannot sue Ohio Defendants in federal court based upon diversity jurisdiction.

This Court disagrees with the Defendants' analysis. The overwhelming authority is that the citizenship of a person is determined at the time the plaintiff commences his lawsuit. *See e.g., Ray,* 519 F.2d at 1082. Thus, a plaintiff may add a nondiverse party subsequently without defeating diversity jurisdiction. *Freeport,* 498 U.S. at ——, 111 S.Ct. at 860.

■ Therefore, this Court holds that diversity of citizenship is determined when the lawsuit is commenced, unless the defendant can show that the plaintiff was acting in bad faith when the plaintiff based subject matter jurisdiction in the original complaint upon diversity jurisdiction. The burden is on the defendant to demonstrate that the plaintiff was acting in bad faith in basing subject matter jurisdiction upon the diversity of the parties.

■ We now apply this holding to the facts before this Court. At the time Mr. Winningham commenced his lawsuit, diversity jurisdiction existed. The burden then shifts to the Defendants to demonstrate that the Plaintiff has acted in bad faith in originally invoking diversity jurisdiction.

No evidence exists that the Plaintiff has acted in bad faith. There is no indication that Mr. Winningham manufactured diversity by moving back and forth between Ohio and Kentucky. Because of Mr. Winningham's accident, he was forced to live wherever someone could assist him since he could not care for himself after his accident. His plight was compounded by his employer's, NAT's, failure to provide compensation benefits as required under the Longshoreman and Harbor Worker's Compensation Act. Mr. Winningham had no income and has had difficulty in feeding, clothing, and even providing basic hygiene for himself as a result of the loss of his hands and forearms. Moreover, no evidence exists that the Plaintiff or his attorneys originally envisioned suing Deutch or Mose Cohen. Instead, the Plaintiff has represented to this Court without opposition that "[a]fter a thorough investigation which has been conducted over the last two years, the Plaintiff believes that the Defendants added in the Second Amended Complaint [Mose Cohen and Deutch] are the partial and/or proximate cause of the Plaintiff's injuries." Doc. 20, at 1.[4]

Accordingly, this Court finds that diversity jurisdiction exists in this lawsuit. Because this Court has jurisdiction based upon diversity jurisdiction, we need not consider whether a federal question arises from this litigation. This Court, therefore, has subject matter jurisdiction to consider the case.

## WHETHER THE DEFENDANTS OWED A DUTY TO THE PLAINTIFF

■ The Defendants Mose Cohen and Deutch have also moved for summary judgment on the grounds that they owed no duty to the Plaintiff because they did not own, control, or maintain the property where Mr. Winningham was injured. Whether a defendant owes a duty in a negligence action is a question of law for the court to determine. *Mussivand v. David,* 45 Ohio St.3d 314, 318, 544 N.E.2d 265, 270 (1989).

■ Under Ohio law, a landowner is liable in tort for injuries sustained on that property if the landowner maintains the right of occupation or control over the property. *Brown v. Cleveland Baseball Co.,* 158 Ohio St. 1, 106 N.E.2d 632 (1952), syllabus no. 4; *Walker v. Mid–States Terminal, Inc.,* 17 Ohio App.3d 19, 21, 477 N.E.2d 1160, 1163 (Lucas Cty.1984). In *Brown,* the Ohio Supreme Court heard a case involving the collapse of temporary bleachers at a professional football game between the Cleveland Rams and the Green Bay Packers. The owner of the park

**4.** This Court recognizes that the Plaintiff's first Amended Complaint added NARC, an Ohio corporation. The first Amended Complaint came four months after the original Complaint, but prior to Robert Sexton's, the original Defendant's, answer. Despite the proximity in time, this Court is unaware of any evidence that Mr. Winningham or his attorney's acted in bad faith by basing subject matter jurisdiction on the diversity of the parties.

where the accident occurred argued that the field had been leased by Daniel Reeves on behalf of the Cleveland Rams. The Ohio Supreme Court found that although the owner of the park did not erect the temporary bleachers, the owner did not totally relinquish all occupation and control over the premises. Therefore, the *Brown* court held that

> [w]here a lessor has not substantially relinquished to his lessee all occupation of and control over a portion of the leased premises and where such lessor has actually exercised his right of occupation of or control over such portion, such lessor is under the duty to exercise ordinary care with respect to the condition of such portion and that duty extends to invitees of the lessee.

*Id.*

We now turn to the matter before this Court. CAS argues that under the installment land contract, CAS sold the property to NARC, and therefore did not owe a duty to Mr. Winningham. The land contract states that CAS "... agrees to deliver possession of the property to the Buyer immediately upon the execution of this Agreement." Attached to Plaintiff's Response to the Defendant's Motion for Summary Judgment, Ex. B.

In opposition, the Plaintiffs note numerous facts which indicate that CAS retained numerous rights over 3291 Southside Avenue. These rights included CAS's right to mortgage the property and the right to enter and inspect it. NARC was required under the installment land contract to maintain the worker's compensation for workers on the lot and to make all repairs to the property as specified by CAS. Moreover, CAS retained an easement to load, unload, and use, without charge, any of the docks on the property until two years after NARC made its final payment under the installment land contract.

In addition, several other facts indicate the extent of CAS's control over 3291 Southside Avenue. Before Mr. Winning-

ham's accident, John Wetterich, Chief Executive Officer of NARC, made electrical wiring improvements at 3291 Southside Avenue. Subsequently, a truck had knocked down the quadraplex powerline. As a result, John Wetterich had restrung personally the quadraplex powerline to prevent trucks from knocking down the wires again. As restrung, the quadraplex powerline ran diagonally across Southside Avenue. Tomme Schwab, a principal of Mose Cohen, knew that Mr. Wetterich had restrung the quadraplex line. Furthermore, CAS used the property in its business. Deutch inspected the property and even possessed a key to the premises. In fact, when NARC tried to lock the gates to the property without providing keys to CAS, CAS cut the locks off the gates.

Finally, CAS, itself, had argued in bankruptcy court that whatever rights NARC may have had in 3291 Southside Avenue, those rights terminated upon the filing of an order of eviction and an accompanying quit-claim deed.[5]

In opposition, CAS argues that it should not be held responsible because NARC was the owner and occupier of the property. In support of its position, CAS cites to *Ripple v. The Mahoning Nat'l Bank*, 143 Ohio St. 614, 56 N.E.2d 289 (1944), and *Cooper v. Roose*, 151 Ohio St. 316, 85 N.E.2d 545 (1949). Both of these cases deal with the liability of a landlord for personal injuries of the lessee or the lessee's employees. These cases are simply not factually analogous to the matter before this Court. In the matter before this Court, it was not a simple lessor and lessee situation. CAS and NARC were both using the property simultaneously from 1985 through 1988, as demonstrated by CAS's easement over 3291 Southside Avenue which allowed CAS to conduct use the property for its business.

The law of Ohio is clear that a landowner will be liable in tort for injuries suffered by a frequenter or invitee if the owner retained the right of control or pos-

---

**5.** This Court has summarized the major instances of the Defendants' ownership, maintenance, and control. These facts are dealt with more thoroughly in the Background section of this Order.

session of the premises. *See Brown*, 158 Ohio St. 1, 106 N.E.2d 632. In the matter before the Court, we conclude as a matter of law that all the Defendants retained sufficient control and possession over the premises to owe a duty to Mr. Winningham. Genuine issues of material fact exist as to whether the Defendants breached their duty. Therefore, we find that summary judgment should not be granted.

## CONCLUSION

This Court has held that it has subject matter jurisdiction to hear this case. Furthermore, this Court has determined that all the Defendants owed a duty to the Plaintiff as a matter of law, and that there are genuine issues of material fact as to whether the Defendants breached their duty.

Accordingly, the Defendants' various motions for summary judgment are denied.

SO ORDERED.