ATTORNEYS FOR APPELLANT
David W. Craig
Scott A. Faultless
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE
R. Jeffrey Lowe
J. Todd Spurgeon
New Albany, Indiana

Eric D. Johnson
Indianapolis, Indiana



FILED
Mar 10 2009, 9:17 am
CLERK
of the supreme court,
court of appeals and
tax court

## In the
## Indiana Supreme Court

No. 03S01-0807-CV-390

FRED JACKSON,

*Appellee  (Defendant below),*

v.

CHRISTINE R. SCHEIBLE, AS THE MOTHER
OF TRAVIS DAVID SCHEIBLE, DECEASED,

*Appellant (Plaintiff below).*

Appeal from the Bartholomew Superior Court, No. 03D01-0602-CT-338
The Honorable Chris D. Monroe, Judge

On Petition to Transfer from the Indiana Court of Appeals, No. 03A01-0704-CV-186

**March 10, 2009**

**Boehm, Justice.**

In Valinet v. Eskew, 574 N.E.2d 283, 285 (Ind. 1991), we adopted Restatement (Second) of Torts section 363 permitting possessors of land to be held liable for harm caused by the condition of trees on land near a highway.  A seller of land may be liable for harm caused by the condition of trees on the land near a highway if the seller is in possession or control of the condition of the trees when the harm occurs.  In this case, the seller did not retain possession or control of routine maintenance, including trimming of trees, and the trial court correctly entered summary judgment for the seller.

**Facts and Procedural History**

On July 5, 2005, ten-year-old Travis Scheible was killed in an accident in Columbus, Indiana. According to the complaint, Travis was riding his bicycle and started to cross the street from behind a mature tree that overhung the sidewalk and obscured his view of oncoming traffic. As he rode into the street, Travis was struck by an oncoming car.

The tree was located on residential property previously owned by Fred and Dorothy Jackson. About six months before the accident, the Jacksons sold the property to Ronald Smith under a two-year installment contract, and Smith began residing on the property.

Travis's mother, Christine Scheible, brought a wrongful death action against Fred Jackson and Smith.[1] Jackson moved for summary judgment, arguing that he had no duty to Travis because he did not own, possess, or control the property at the time of the accident. Scheible responded that summary judgment was inappropriate because of genuine issues of material fact regarding Jackson's possession and control of the property at the time of the accident. Scheible also argued that Jackson was negligent per se for failing to comply with a city ordinance requiring landowners to trim trees on their property.

The trial court granted summary judgment in favor of Jackson without explanation. The trial court's order included the findings required by Trial Rule 54(B) for a final judgment, and Scheible appealed.

The Court of Appeals reversed. Scheible v. Jackson, 881 N.E.2d 1052, 1058 (Ind. Ct. App. 2008). The Court of Appeals held that a vendor may be liable for harm caused by the condition of sold property if the vendor retains control of the property. Id. at 1055. The majority concluded that there was a genuine issue of material fact regarding whether Jackson controlled the property after the sale. Id. at 1058. Chief Judge Baker dissented. Id. Neither opinion discussed the effect of the city ordinance.

---

[1] Dorothy Jackson was not named as a defendant. Ray Scheible, Travis's father, was named as a defendant to answer as to any wrongful death claim he may assert. The driver of the vehicle that struck Travis was not sued.

**Standard of Review**

We review a summary judgment order de novo. Lean v. Reed, 876 N.E.2d 1104, 1107 (Ind. 2007). Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. Ind. Trial Rule 56(C). In determining whether summary judgment is appropriate, we construe all facts and reasonable inferences in favor of the nonmoving party. Filip v. Block, 879 N.E.2d 1076, 1080 (Ind. 2008).

**I. Vendor Liability for the Condition of Trees on Land Near a Highway**

The issue here is one of first impression: under what circumstances a vendor of land may be liable to a third party for harm resulting from the condition of trees on the land near a highway. Both parties analyze the question under subsection 363(2) of the Restatement (Second) of Torts (1965),[2] adopted in Valinet v. Eskew, 574 N.E.2d 283, 285 (Ind. 1991). Section 363(2) reads:

> A possessor of land in an urban area is subject to liability to persons using a public highway for physical harm resulting from his failure to exercise reasonable care to prevent an unreasonable risk of harm arising from the condition of trees on the land near the highway.

A "possessor" is defined in part as "a person who is in occupation of the land with intent to control it." Id. § 328E(a). Although this is this Court's first case involving a vendor's possession, possession is an issue common to all premises liability cases in order to "subject to liability the person who could have known of any dangers on the land and therefore could have acted to prevent any foreseeable harm." Rhodes v. Wright, 805 N.E.2d 382, 385 (Ind. 2004). A theme throughout our premises liability cases is that liability arises from actual control over the condition causing the injury.[3] Generally, a vendor in a land-sale contract will have no liability under

---

[2] Neither party cites Restatement section 352, cited by the Court of Appeals, which provides for vendor liability for harm occurring "on the land," presumably because Travis was not injured on the property. Nor is there any claim asserted under Restatement sections 372 or 373. These sections discuss vendor liability for harm occurring "outside of the land" from "artificial conditions," which include "trees or plants planted or preserved . . . irrespective of whether they are harmful in themselves or become so only because of the subsequent operation of natural forces." Restatement § 363 cmt. b.

[3] See, e.g., Risk v. Schilling, 569 N.E.2d 646, 647–48 (Ind. 1991) (holding that partnership that owned land had no liability for injury occurring in a workshop on the land when only one member of the partnership had constructed the workshop and used it for a hobby); Olds v. Noel, 857 N.E.2d 1041, 1046 (Ind. Ct. App. 2006) (holding that landlord's right of entry was not dispositive of control over snow removal);

section 363 because the vendor no longer occupies or controls the condition of the property even if the vendor retains legal title as security. See Skendzel v. Marshall, 261 Ind. 226, 234, 301 N.E.2d 641, 646 (1973) ("When the parties [to a land-sale contract] enter into the contract, all incidents of ownership accrue to the vendee. . . . Conceptually, therefore, the retention of title by the vendor is the same as reserving a lien or mortgage.").

Here Scheible acknowledges that a vendor will typically have no post-sale liability, but argues that Jackson can be held liable because he continued "acting like a landowner" after the sale. Scheible designated the following evidence in support of her contention that Jackson retained control of the property.

First, Scheible notes that Smith needed Jackson's permission to make changes to the property. The land-sale contract provided that Smith

> may treat said real estate as his own with the understanding that [he] shall not commit any waste to said real estate or the improvements thereon. Also, prior to the time of the delivery of title to said real estate, [Smith] shall not construct any improvements on said property without the prior written permission of [the Jacksons.]

Smith testified in deposition that

> [I] usually asked before I done something, because I wanted to do it fairly major, and I usually asked permission, because I felt like that if I done something major they should be aware of it, because technically it was still their property even though I was buying it on contract, and that's the way I felt.

Smith provided "knocking out a wall" as an example of a change for which he would ask permission. Smith also testified that he asked permission to remove the tree after the accident, but later stated that "[a]ll I know is they was aware that [the tree] was gonna be taken down. I don't know if I asked." Even when viewed most favorably to Scheible, this evidence does not suggest that Jackson controlled the condition of the property. The evidence merely reflects that the prop-

---

Reed v. Beachy Const. Corp, 781 N.E.2d 1145, 1150 (Ind. Ct. App. 2002) (holding that homeowners "did not control the premises to the extent a duty . . . arose" for injury during a home show when homeowners had moved only a few items in and had surrendered possession for the home show), trans. denied; Harris v. Traini, 759 N.E.2d 215, 225 & n.11 (Ind. Ct. App. 2001) (holding that marina could not be liable for injury on a houseboat even though the marina had the right to move the houseboat in an emergency), trans. denied.

erty was security for the installment contract, and Jackson required permission for major changes to protect his security interest.

Second, Scheible points to the fact that Jackson alone held the casualty and liability insurance for the property as evidence that Jackson controlled the property. The land-sale contract provided that Smith would obtain certain levels of casualty and liability insurance for the property and that the policies would name both Smith and the Jacksons as insureds. That provision was not implemented. Instead, Smith paid Jackson the amounts of the premiums to maintain the existing policies, but Smith was never added as an insured.[4] The policy protected the home against fire and casualty loss, as well as liability to third parties. As with the requirement that Smith receive permission before improving the property, Jackson's maintaining insurance on the property is consistent with his desire to protect his financial investment and does not demonstrate his control.[5] See Helton v. Harbrecht, 701 N.E.2d 1265, 1268 (Ind. Ct. App. 1998) (holding that construction company that carried general work site liability insurance did not control partially-constructed home at the time of accident when none of its employees had been at the site for a month), trans. denied.

Third, Scheible notes that Jackson drove past the property on the way to visit family at least a dozen times each month in the six months before the accident and would have noticed the tree's condition. This fact also does not establish Jackson's control of the property. Upon execution of the land-sale contract, Smith took exclusive possession of the property, leaving Jackson with no control over the maintenance of the property.[6]

---

[4] The parties have not presented the issue of whether Smith has a claim against Jackson or Jackson's insurer for indemnity or otherwise.

[5] The land-sale contract provided that "[Smith] hereby assumes all risk and responsibility for accident, injury or damage to person and property arising from [Smith's] use and control of the real estate. . . . [T]he risk of loss to any improvements on said real estate shall be borne by [Smith] . . . ."

[6] The land-sale contract provided that

> [p]rior to the time of title transfer of the real estate, [Smith] shall have possession of said real estate upon the date of the signing of this contract. Prior to the time of the delivery of title to said real estate, [Smith] may treat said real estate as his own with the understanding that [Smith] shall not commit any waste to said real estate or the improvements thereon.

Fourth, Scheible argues that Jackson's receipt of a notice from the city regarding tree saplings on the property indicates Jackson's control of the property. Jackson's receipt of the notice indicates that he held legal title to the property but does not establish control. Indeed, after Jackson received the notice, he gave it to Smith, who "agreed to remedy" the problem.

Finally, at some point Smith "renounced his rights" and returned the property to the Jacksons. Some building materials remained on the property. Scheible points to the parties' actions after Smith renounced his rights to the property. Smith testified that he "[r]enounced the rights, signed it back over, left all building materials there because [Jackson] felt like since I bought them for the property, they should stay there. . . . My thoughts weren't quite happy with that, but I said fine, because it wasn't about the materials." Jackson's assertion of control of the building materials after he had regained possession does not suggest that he controlled the condition of the property at the time of the accident.

In addition to these points raised by Scheible, the Court of Appeals found that the financial terms of the sale raised a question as to the Jacksons' control of the property. The Jacksons sold the property for $60,000. Smith made a $10,000 down payment and agreed to make monthly payments of $450 for two years and a $43,913.34 balloon payment. The Court of Appeals reasoned that these terms reflected Smith's poor credit rating and reasonably foreseeable default so "Jackson clearly had a keen interest in the maintenance of the Property during the short period of time until the possibility of repossession was foreclosed." Scheible v. Jackson, 881 N.E.2d 1052, 1058 (Ind. Ct. App. 2008). Assuming that Jackson had a keen interest in the maintenance of the property, without more, that interest does not translate into his control over the property. Regardless of Jackson's retained equity in the property, all incidents of ownership passed to Smith upon execution of the land-sale contract.

In sum, the contract called for possession to transfer to Smith at closing. None of the evidence designated is inconsistent with that provision. As a matter of law, liability under section 343, the only provision addressed by the parties, lies with Smith as the possessor of the land.

## II. Negligence Per Se

Scheible also argues that summary judgment is improper because Jackson's violation of a city ordinance constitutes negligence per se. We do not believe the cited ordinance applies to Jackson.

At the time of the accident, a Columbus city ordinance required property "owners" to trim street trees to certain specifications.[7] "Owner" was defined to include "any part owner, joint owner, tenant in common, tenant in partnership, joint tenant or tenant by the entirety of the whole or part of such building or land." Columbus, Ind., City Mun. Code § 1.04.040. Scheible contends that because Smith had not paid the entire contract amount and the deed had not been conveyed, Jackson was the owner of the property and had a duty to trim the tree as provided in the ordinance. Scheible correctly states that Jackson retained legal title to the property until Smith satisfied the purchase price. However, as noted above, the law in Indiana has long been that "[w]hen the parties enter into the [land-sale] contract, all incidents of ownership accrue to the vendee." Skendzel v. Marshall, 261 Ind. 226, 234, 301 N.E.2d 641, 646 (Ind. 1973). At the time of the accident, Jackson occupied the position of lienholder, not owner. Id. ("The Court, in effect, views a conditional land contract as a sale with a security interest in the form of legal title reserved by the vendor. Conceptually, therefore, the retention of the title by the vendor is the same as reserving a lien or mortgage."). Ownership of the property was transferred to Smith upon execution of the land sale contract, and Jackson had no duty at the time of the accident to maintain the tree as provided by the city ordinance.

---

[7] The ordinance provides

> All persons who are owners of shade trees, or who are intended as owner or occupant or agent of any real estate abutting or contiguous to any part of any street on, along or in front of or adjacent to which shade trees are planted or growing shall cause the same to be carefully and properly trimmed to a point on the tree as high as twelve feet from the ground; provided, that all such shade trees shall be trimmed on the side next to the street so that the limbs or branches where so trimmed shall not extend more than twelve feet from the trunk of such shade trees; provided further, that all such shade trees shall be so trimmed that in no case shall such shade tree or trees be more than fifty feet high.

Columbus, Ind., City Mun. Code § 12.20.020A (1995).

## Conclusion

The trial court's grant of summary judgment in favor of Jackson is affirmed.

Shepard, C.J., and Sullivan, J., concur.

Rucker, J., dissents with separate opinion in which Dickson, J., concurs.

**Rucker, J., dissenting.**

A "possessor" of land is defined as "(a) a person who is in occupation of the land with intent to control it or (b) a person who has been in occupation of land with intent to control it, if no other person has subsequently occupied it with intent to control it, or (c) a person who is entitled to immediate occupation of the land, if no other person is in possession under Clauses (a) and (b)." Restatement (Second) of Torts § 328E (1965). It appears that the critical inquiry in determining whether a party is a "possessor" as defined in Section 328E is the notion of control over the property. "Only the party who controls the land can remedy the hazardous conditions which exist upon it . . . ." Rhodes v. Wright, 805 N.E.2d 382, 385 (Ind. 2004) (citation omitted). "Control" in turn, is defined in part as "the power or authority to manage, direct, or oversee." Black's Law Dictionary 353 (8th ed. 2004).

In my view there is no question that Jackson exercised some degree of control over the property notwithstanding he had sold it on contract to Smith. At the very least there is a dispute of fact on this point, and summary judgment in Jackson's favor was inappropriate. I therefore agree with the Court of Appeals majority and would reverse the judgment of the trial court.

Dickson, J., concurs.