Colorado Court of Appeals Opinions || July 16, 2015


Colorado Court of Appeals -- July 16, 2015
2015 COA 98. No. 14CA0395. Lucero v. Ulvestad.



 
 
 
 COLORADO COURT OF APPEALS

 
 2015 COA 98

 
 



 Court of Appeals No. 14CA0395
 Jefferson County District Court No. 12CV3580
 Honorable Margie L. Enquist, Judge


 Alicia Greene Lucero,

 Plaintiff-Appellant,

 v.

 Jerald Ulvestad,

 Defendant-Appellee.


 JUDGMENT AFFIRMED

 Division IV
 Opinion by JUDGE GRAHAM
 Webb and Terry, JJ., concur

 Announced July 16, 2015


 Martens & Associates, P.C., Mark P. Martens, Denver, Colorado; Lathrop & Gage LLP, Angela L. Ekker, Denver, Colorado, for Plaintiff-Appellant

 The Ross-Shannon Law Firm, P.C., Bradley Ross-Shannon, Mark J. Gauthier, Lakewood, Colorado, for Defendant-Appellee

 Â 


 Â¶1Â Â Â Â Â Â Â  In this premises liability action, plaintiff, Alicia Greene Lucero (Lucero), appeals the judgment entered on a jury verdict in favor of defendant, Jerald Ulvestad (Ulvestad). Because we conclude that Ulvestad was not a landowner under the Colorado Premises Liability Act (CPLA or the Act), section 13-21-115, C.R.S. 2014, we affirm.

 
 I. Background
 
 Â¶2Â Â Â Â Â Â Â  This case arises from Luceroâs unsupervised use of a steam room in a home purchased by Danny T. Landers, Sr. (Landers) from Ulvestad.
 
 Â¶3Â Â Â Â Â Â Â  On September 10, 2009, Ulvestad entered into a bankless financing agreement, commonly known as an installment land contract, with Landers to sell real property located in Jefferson County. The property included a single-family home with a steam room. The contract provided Landers with immediate possession of the property, but record title would remain in Ulvestadâs name until Landers paid the entire purchase price. Under the contract, Ulvestad executed a warranty deed in favor of Landers that would be held in escrow until the final payment was made. The contract required Landers to get approval from Ulvestad before making major alterations to the property; required Ulvestad to maintain an insurance policy on the property; and provided that Ulvestadâs prior mortgage on the property remained in place.


 
 Â¶4Â Â Â Â Â Â Â  The next day, Landers asked fifteen-year-old Lucero and her mother to help him move into the house. Landers gave Lucero permission to use the steam room. On the morning of September 12, 2009, Lucero entered the steam room unsupervised and suffered a seizure rendering her unconscious. Before she was found, Lucero suffered severe burns to her face, head, and arm.
 
 Â¶5Â Â Â Â Â Â Â  Lucero sued Landers under the CPLA and for negligence. Landers failed to respond and the trial court entered a default judgment against him. Lucero then amended her complaint to add Ulvestad and assert the same claims against him. Ulvestad answered and denied any liability to Lucero.
 
 Â¶6Â Â Â Â Â Â Â  Prior to trial, Ulvestad filed a motion for summary judgment arguing he did not owe Lucero a duty of care and that he was not a landowner as defined by the CPLA. The trial court disagreed, concluding that there existed a genuine issue of material fact regarding whether Ulvestad was âa person in possession of real propertyâ and, therefore, a âlandownerâ under the CPLA. The court also concluded that a genuine issue of material fact existed as toÂ whether Ulvestad was a landowner because âLucero was injured on Property to which . . . Ulvestad was the record title holder, by a condition on the Property that he had installed.â However, the court agreed that Ulvestad owed Lucero no common law duty of care and dismissed her negligence claim. Lucero does not appeal this ruling.


 
 Â¶7Â Â Â Â Â Â Â  A jury trial was held on the CPLA claim and for a determination of Luceroâs damages. At the close of Luceroâs case, Ulvestad moved for a directed verdict, again arguing he was not a landowner under the CPLA. The court denied the motion but later determined that as to Ulvestad, Lucero was a trespasser as defined by the CPLA because she had not received his permission to use the steam room. See Â§ 13-21-115(4) (âIn any action to which this section applies, the judge shall determine whether the plaintiff is a trespasser, a licensee, or an invitee.â). Accordingly, the court instructed the jury that Ulvestad had to have acted âwillfully or deliberatelyâ in causing Luceroâs injuries to find in favor of Lucero. See Â§ 13-21-115(3)(a) (âA trespasser may recover only for damages willfully or deliberately caused by the landowner.â). The jury returned a verdict in favor of Ulvestad and against Lucero.


 II. The Act

 
 Â¶8Â Â Â Â Â Â Â  Lucero appeals the courtâs determination that she was a trespasser on the property at the time she was injured. We conclude that because Ulvestad was not a landowner under the CPLA, the trial court should have granted Ulvestadâs motion for directed verdict. Therefore, Lucero was not harmed by the trespasser determination and we affirm the judgment against Lucero. See Blood v. Qwest Servs. Corp., 224 P.3d 301, 329 (Colo. App. 2009) (â[W]e can affirm on any ground supported by the record.â); cf. C.R.C.P. 61 (âThe court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties.â).[1]
 
 A. History
 
 Â¶9Â Â Â Â Â Â Â  Until 1971, a landownerâs duty of care was determined based on the common law classification of the injured party as a trespasser, licensee, or invitee. Vigil v. Franklin, 103 P.3d 322, 325-26 (Colo. 2004). In Mile High Fence Co. v. Radovich, 175 Colo. 537, 489 P.2d 308 (1971), the supreme court overruled these common law principles because it perceived that they had occasioned harsh rulings as a matter of law against plaintiffs. Pierson v. Black Canyon Aggregates, Inc., 48 P.3d 1215, 1218 (Colo. 2002). The court instead applied general negligence law, and considered in its analysis the status of the plaintiffâs entry onto the land. Id.
 
 Â¶10Â Â Â Â Â Â Â  The General Assembly enacted the CPLA in 1986, reinstating the requirement to determine the status of an injured party as an invitee, licensee, or trespasser to determine a landownerâs duty. See Vigil, 103 P.3d at 326. When the supreme court held that statute unconstitutional, see Gallegos v. Phipps, 779 P.2d 856, 862Â­63 (Colo. 1989), the General Assembly amended it to address the courtâs equal protection concerns, but retained the status classifications. Vigil, 103 P.3d at 326. The CPLA specifically notes that
 
 [t]he general assembly recognizes that by amending this section it is not reinstating the common law status categories as they existed immediately prior to Mile [High] Fence v. Radovich, 175 Colo. 537, 489 P.2d 308 (1971) but that its purpose is to protect landowners from liability in some circumstances when theyÂ were not protected at common law and to define the instances when liability will be imposed in the manner most consistent with the policies set forth in [this Act].


 
 Â§ 13-21-115(1.5)(e), C.R.S. 2014; see Lakeview Assocs., Ltd. v. Maes, 907 P.2d 580, 583 (Colo. 1995).
 
 Â¶11Â Â Â Â Â Â Â  Thus, â[t]he overriding purpose of the premises liability statute is to clarify and to narrow private landownersâ liability to persons entering their land, based uponâ the entrantâs status as defined in the statute. Pierson, 48 P.3d at 1219; see Wycoff v. Grace Cmty. Church of Assemblies of God, 251 P.3d 1260, 1266 (Colo. App. 2010) (premises liability act intended to âprotect landownersâ).
 
 Â¶12Â Â Â Â Â Â Â  Further, the General Assembly indicated its intent to completely occupy the field and supersede the existing law in the area, such that the CPLA âleaves no room for application of common law tort duties.â Vigil, 103 P.3d at 328 (â[T]he plain language preempts prior common law theories of liability, and establishes the statute as the sole codification of landowner duties in tort.â).
 
 B. Who is a Landowner Under the CPLA
 
 Â¶13Â Â Â Â Â Â Â  âFor the purposes of this section, âlandownerâ includes, without limitation, an authorized agent or a person in possession ofÂ real property and a person legally responsible for the condition of real property or for the activities conducted or circumstances existing on real property.â Â§ 13-21-115(1). âThus, the [C]PLA focuses on duties owed by a landowner in his or her legal capacity as a landowner; that is, someone who is legally responsible for the condition of the property, or for the activities conducted or circumstances existing on the property.â Jordan v. Panorama Orthopedics & Spine Ctr., P.C., 2015 CO 24, Â¶19 (Jordan II).


 
 Â¶14Â Â Â Â Â Â Â  âWith respect to the first statutory definition, [the supreme court] held in Pierson that a person âin possession ofâ land is one who occupies the land with intent to control it, although not necessarily to the exclusion of all others.â Id. at Â¶23. âLogically, a person âin possession ofâ real property is presumed to be responsible for the conditions, activities, or circumstances on that property.â Id. âHowever, through the second statutory definition, the General Assembly also conferred landowner status [up]on persons who are otherwise legally responsible for the conditions, activities, or circumstances on the property â even though such persons are not in possession of the property.â Id. (emphasis added). This definition âplaces prospective liability with those who are legallyÂ responsible for the conditions, activities, or circumstances on the property.â Id. A partyâs legal responsibility for the condition of a property may be determined by contract. See id. at Â¶Â¶34-37 (tenant was not legally responsible for the condition of the sidewalk where the plaintiff fell because the lease between tenant and landlord assigned responsibility for ordinary maintenance and upkeep of the common areas to the landlord).


 
 Â¶15Â Â Â Â Â Â Â  As a result, âthe statutory definition of âlandownerâ does not automatically make the holder of the title to the property a âlandownerâ for purposes of determining premises liability under the statute.â Perez v. Grovert, 962 P.2d 996, 999 (Colo. App. 1998); cf. Nordin v. Madden, 148 P.3d 218, 220 (Colo. App. 2006) (discussing when a landlord retains enough control over the premises to be considered a landowner under the CPLA).
 
 C. Installment Land Contracts and the CPLA
 
 Â¶16Â Â Â Â Â Â Â  âInstallment land contracts were common instruments of financing at one time.â Sleeping Indian Ranch, Inc. v. West Ridge Grp., LLC, 119 P.3d 1062, 1068 (Colo. 2005). âThinking of an installment land contract as a secured financing arrangement makes the analysis clearer. The sellers held the title in escrowÂ pending fulfillment of contract terms.â Id. âThe purchaser assumed possession of the realty and the rights and responsibilities of ownership while the seller retained the legal title until the contract was paid in full.â Id. (citing Â§ 38-35-126, C.R.S. 2004) (emphasis added); 17 Richard A. Lord, Williston on Contracts Â§ 50:42, at 417 (4th ed. 2000 & Supp. 2004)); see Rustic Hills Shopping Plaza, Inc. v. Columbia Savings & Loan Assân, 661 P.2d 254, 256 (Colo. 1983) (âIn the case of an installment land contract, both possession and equitable title are in the purchaser, with the seller retaining bare legal title.â); cf. Wiley v. Lininger, 119 Colo. 497, 502, 204 P.2d 1083, 1086 (1949) (â[T]he vendee under a contract for the sale of land, being regarded as the equitable owner, assumes the risk of destruction of or injury to the property where he is in possession.â).


 
 Â¶17Â Â Â Â Â Â Â  âMost jurisdictions abide by the principle that upon contracting for the purchase and sale of land, the vendee is the owner in equity of the land, and the seller merely holds legal title as security for the payment of the purchase price.â Sleeping Indian Ranch, 119 P.3d at 1068. âConsequently, under the installment land contract, the vendorâs interest is classified as âpersonalty,â that is, he retains no interest in the real property.â Id. at 1068-69. â[T]he vendeeâs interest under the contract is considered realty so that the vendee is entitled to all benefits attaching to the property, and unless the contract indicates otherwise, he assumes all responsibilities or losses as well.â Id. at 1069.


 
 Â¶18Â Â Â Â Â Â Â  No Colorado case has addressed the intersection of an installment land contract and landowner liability under the CPLA. However, many states that have considered the liability of a seller under an installment land contract to a plaintiff injured on the property after sale have concluded that no liability exists. See, e.g., Anderson v. Cosmopolitan Natâl Bank of Chicago, 301 N.E.2d 296, 298-99 (Ill. 1973) (rights retained by vendors of real property under installment contract did not warrant treating vendors as owners in determining liability for injuries resulting from defective condition of property); Jackson v. Scheible, 902 N.E.2d 807, 810 (Ind. 2009) (âGenerally, a vendor in a land-sale contract will have no liability . . . because the vendor no longer occupies or controls the condition of the property even if the vendor retains legal title as security.â); Graham v. Claypool, 978 P.2d 298, 299 (Kan. Ct. App. 1999) (âThe seller of real estate under an executory contract for deed is not liable for torts occurring on the conveyed property unless the sellerÂ fails to inform the buyer of known dangerous situations that the buyer could not discover or the seller actively conceals.â); Edwards v. Van Skiver, 681 N.Y.S.2d 893, 894-95 (N.Y. App. Div. 1998) (vendor did not retain sufficient possession and control of property to be subject to liability for tenantâs injuries); accord Conneely v. Herzog, 822 N.Y.S.2d 662, 663 (N.Y. App. Div. 2006); Welz v. Wong, 605 A.2d 368, 372 (Pa. Super. Ct. 1992) (a landowner who sells land through a land sale contract and who retains title pending performance of the contract should be treated the same for liability purposes as a vendor who sells the land and delivers a deed); Steiner v. Wis. Am. Mut. Ins. Co., 697 N.W.2d 452, 466 (Wis. 2005) (installment land contract vendee retained equitable title to property on the date of alleged injury so that its insurer was possibly liable for the plaintiffâs injuries); McCarty v. Covelli, 514 N.W.2d 45, 46 (Wis. Ct. App. 1994) (vendor of property was not liable to tenant of vendee who was in possession at the time the property was transferred; vendee had the right to possession and, therefore, vendor was no longer subject to liability for physical harm caused to vendee or others while upon the land); Dubray v. Howshar, 884 P.2d 23, 26 (Wyo. 1994) (vendor of bar under installment landÂ contract who still had liquor license in his name and whose contract included a warranty deed being held in escrow was not a landowner for the purposes of premises liability because he was not in possession of the bar and did not hold title to the bar because title had been placed with the escrow agent); see also Restatement (Second) of Torts Â§ 352 (1965) (â[A] vendor of land is not subject to liability for physical harm caused to his vendee or others while upon the land after the vendee has taken possession by any dangerous condition, whether natural or artificial, which existed at the time that the vendee took possession.â); but see Winningham v. N. Am. Res. Corp., 809 F. Supp. 546, 553-55 (S.D. Ohio 1992) (title holder under installment land contract retained a significant degree of control over property, making it possibly liable to injured party).


 
 Â¶19Â Â Â Â Â Â Â  The rationale of the Supreme Court of Illinois is instructive:
 
 [T]he argument [by the plaintiff] is that those who sell real estate upon installment contracts should be subjected to a different and more strict liability than is imposed upon other vendors. Specifically, it is urged that âthe âcontract sellerâ should be treated as an owner or lessorâ because of the significant rights that he retains under his contract. These rights usually include the right to enter and make repairs and to charge the cost to the buyer. The seller has the right to insure if the buyerÂ fails to do so and, in the event of a default on the part of the buyer, has a simple remedy by which he may regain possession. We are not persuaded by this argument. Substantially similar arguments can be advanced with respect to mortgagees, who have the same or substantially similar rights. That the device of the installment contract as a means of financing the purchase of real estate is subject to abuse, and indeed has been abused, does not mean that it is not a useful credit device or that this court should impose upon a contract seller the liability of an owner of real estate.


 
 Anderson, 301 N.E.2d at 298-99; accord Welz, 605 A.2d at 370-71; Dubray, 884 P.2d at 26; see Jackson, 902 N.E.2d at 810; Graham, 978 P.2d at 300; McCarty, 514 N.W.2d at 46. We consider these decisions to be well reasoned and apply them here.
 
 Â¶20Â Â Â Â Â Â Â  With this precedent in mind, we turn to the status of Ulvestad, as title owner of the property subject to an installment land contract, and the question of whether he is a âlandownerâ under the CPLA.[2]
 
 D. Standard of Review
 
 Â¶21Â Â Â Â Â Â Â  â[I]n reviewing a district courtâs determination that a party is a landowner under the Act, an appellate court should review theÂ courtâs findings of historical fact for clear error, deciding only whether there is any evidence in the record to support those findings.â Jordan v. Panorama Orthopedics & Spine Ctr., PC, 2013 COA 87, Â¶13, affâd, 2015 CO 24. âAn appellate court should review the district courtâs ultimate legal conclusion that a party is a landowner de novo.â Id.
 
 E. Ulvestad is Not a Landowner Under the CPLA


 
 Â¶22Â Â Â Â Â Â Â  The recital clause of the âcontract under bankless financing program,â which transferred possession of the property from Ulvestad to Landers, states âThe Contract Under Bankless Financing Program shall be generally referred to as the Installment Land Contract (ILC).â The contract states in pertinent part:
 
 Seller [Jerald A. Ulvestad . . . ] agrees to sell and Purchase[r] [Danny T. Landers] agrees to buy the following described real estate in the County of Jefferson, State of Colorado . . . hereinafter called the Property.
 
 . . .
 
 Concurrent with the execution of this contract, Purchase[r] and Seller have executed an escrow agreement incorporating the terms hereof with Bankers Escrow Corporation, as escrow agent, and Seller has executed and delivered to said escrow agent a warranty deed to Purchaser conveying the Property free andÂ clear of all taxes except the general taxes for the year of closing . . . free and clear of all liens and encumbrances except GN Mortgage LLC, 705,000.00 recorded on 2/1/2006 . . . . Said warranty deed shall be delivered to Purchaser by the escrow agent upon payment in full of the indebtedness hereunder or as otherwise provided herein.
 
 . . .
 
 Possession of the Property shall be delivered to Purchaser on signing date.
 
 . . .
 
 Purchaser shall not make any major alteration or addition to the Property without first obtaining permission of Seller, which permission shall not be unreasonably withheld. All expenses incurred in making alterations, additions or improvements to the Property shall be promptly paid by Purchaser. Purchaser shall keep the Property in a good state of repair during the term thereof.


 
 The contract also allows for simplified eviction procedures if Landers failed to make payments under the contract. An addendum to the contract states in part:
 
 The BFP [bankless financing program] is a conditional sale contract for the sale of real property. The Buyer makes a down payment and agreed-upon monthly payments to the Escrow Agent who pays principal, interest, taxes and insurance on the property for a period of approximately six years. At someÂ time during this time period, the buyer must pay the agreed upon price for the property and then receive a warranty deed from the escrow agent.
 
 . . .
 
 If Buyer is in default, Seller may commence an eviction action. Buyer may be able to argue that an equitable interest in the property exists which could only be extinguished through a foreclosure or quite title action. If Buyer is in default, the seller may need to make payments to a senior lender to prevent foreclosure on the underlying loan, a potential deficiency judgment, and detrimental effects to the sellerâs credit rating.


 
 Â¶23Â Â Â Â Â Â Â  When Landers and Ulvestad executed the contract, they also signed a written notice of transfer by land contract, which was filed with the county recorder. Under the contract, Ulvestad continued to carry insurance on the property and added Landers as an additional insured to the policy.
 
 Â¶24Â Â Â Â Â Â Â  Based on the plain language of this contract, we conclude that Ulvestad, on the date possession of the property was transferred to Landers, was no longer a person âin possession of real propertyâ or âlegally responsible for the condition of real propertyâ making him a landowner under the CPLA. See Jordan II, Â¶35 (applying plain language of lease to determine landowner status under CPLA).Â 


 
 Â¶25Â Â Â Â Â Â Â  First, once Landers took possession of the property after signing the installment land contract, Ulvestad was no longer âa person in possession of real propertyâ because he was no longer âin occupation of the land with intent to control it.â Id. at Â¶28 (â[A] person âin possession ofâ land is one who is âin occupation of the land with intent to control it.ââ (quoting Pierson, 48 P.3d at 1219Â­20)). Indeed, it is undisputed that Landers received exclusive possession of the property on September 10, 2009.
 
 Â¶26Â Â Â Â Â Â Â  Second, the terms of the installment land contract gave all responsibility for the conditions, activities, or circumstances on the property to Landers. Landers was responsible for keeping the property âin good repairâ and the contract did not reserve any responsibility for the condition of the premises to Ulvestad. While the contract required that Landers receive permission prior to making improvements on the property, this restriction reflects that the property was security for the contract and that Landers was required to seek permission for major changes to protect Ulvestadâs security interest. See Jackson, 902 N.E.2d at 811; see also Anderson, 301 N.E.2d at 298-99. And Ulvestadâs maintaining insurance on the property is consistent with his desire to protectÂ his financial investment and does not establish legal responsibility with respect to the condition of the property. See Jackson, 902 N.E.2d at 811; Welz, 605 A.2d at 306-07 (âIn this scenario, the seller is filling the shoes of both seller and mortgagee. After the contract is signed the rights retained are essentially those possessed by a mortgagee. Notably, the scope of liability urged by appellant here is not recognized as to a mortgagee, either.â). Ulvestad retained the legal title only as a device to protect his interest in the event that Landers defaulted on the contract.


 
 Â¶27Â Â Â Â Â Â Â  Our analysis is not changed by the fact that sometime after Luceroâs accident, Landers failed to make payments on the contract and Ulvestad retook possession of the property. Ulvestadâs action in regaining possession does not suggest that he was legally responsible for the condition of the property at the time of the accident.
 
 Â¶28Â Â Â Â Â Â Â  The plain language of the installment land contract used between Ulvestad and Landers did not reserve possession or legal responsibility for the property in Ulvestad. In sum, Ulvestad was not a landowner under the CPLA.
 
 III. Conclusion


 Â¶29Â Â Â Â Â Â Â  Despite being record title holder of the property, because Ulvestad was not in possession of the property when Lucero was injured and was not otherwise legally responsible for the conditions, activities, or circumstances on the property under the installment land contract, he was not a âlandownerâ as defined by the CPLA in section 13-21-115(1). Accordingly, we affirm the judgment in favor of Ulvestad and against Lucero on her CPLA claim.

 Â¶30Â Â Â Â Â Â Â  The judgment is affirmed.

 JUDGE WEBB and JUDGE TERRY concur.


 [1] Similarly, because Ulvestad does not seek to increase his rights under the judgment, it was unnecessary for him to file a cross-appeal on this issue. See, e.g., Leverage Leasing Co. v. Smith, 143 P.3d 1164, 1167-68 (Colo. App. 2006) (âWithout filing a cross-appeal, however, an appellee may raise any argument in support of the trial courtâs judgment, so long as the appellee does not seek to increase his rights under the judgment.â).

 [2] We interpret the contract de novo, see, e.g., Oster v. Baack, 2015 COA 39, Â¶35.




These opinions are not final. They may be modified, changed or withdrawn in accordance with Rules 40 and 49 of the Colorado Appellate Rules. Changes to or modifications of these opinions resulting from any action taken by the Court of Appeals or the Supreme Court are not incorporated here. 



Colorado Court of Appeals Opinions || July 16, 2015


Back